736 S.W.2d 632 (1987)
INWOOD NORTH HOMEOWNERS' ASSOCIATION, INC., Petitioner,
v.
Charlie HARRIS, Jr., et al. and Rolando M. Pamilar, et al., Respondents.
Nos. C-5283, C-5285.
Supreme Court of Texas.
July 15, 1987.
*633 Lou W. Burton, Burton & Associates, P.C., Houston, for petitioner.
Merrill Shields, Dula, Shields & Egbert, Houston, for respondents.
Rolando M. Pamilar, Flor F. Lacambra, Jorge Custodio, pro se.
ROBERTSON, Justice.
This case involves a suit between a homeowners' association and homeowners who are delinquent in their payment of neighborhood assessments. The issue before this court is whether the homestead laws of Texas protect the homeowners against foreclosure for their failure to pay the assessments.
The trial court granted a default judgment against the several homeowners in the amounts they were in arrears, but refused to allow the homeowners' association to foreclose on the homes to collect the sums due. The court of appeals affirmed, 707 S.W.2d 127. We reverse the judgment of the court of appeals.
In December 1980, Inwood North Associates filed a declaration of covenants and restrictions for the Inwood North subdivision in the Harris County real property records. The declaration provided that all the lots within the subdivision were impressed with certain covenants and restrictions and that such would run with the land and be binding upon all parties acquiring rights to any of the property therein. The declaration thereafter created Inwood North Homeowners' Association, a nonprofit corporation, to enforce the various restrictive covenants and to ensure the preservation of the uniform development plan. Under Article IV of the declaration, each person receiving a deed for a lot in the subdivision "is deemed to covenant and agree to pay the Association the following: (a) annual assessment or charges; and (b) special assessments for capital improvements." These assessments, plus interest and costs of collection, were designated to be "a charge on the land and shall be secured by a continuing Vendor's Lien upon the Lot against which such assessments or charges are made."
Many lots in the subdivision were bought between 1981-83, and the respondents here were among the purchasers. The deeds *634 given to the various homeowners contained specific references to the maintenance charges, or in some cases to the property records where the declaration was filed. When some of the homeowners became lax in the payment of their assessment charges, the Association brought suit to recover the amounts due and sought to foreclose on the "Vendor's Lien" contained in the declaration. While many of the delinquent sums were subsequently received, several homeowners failed to settle their accounts. When these homeowners failed to appear at trial after being properly served, the trial court rendered a default judgment against them.
In upholding the trial court's refusal to order foreclosure, the court of appeals held that no proper vendor's lien was formed by the declarations, thus holding the homestead laws of this State precluded foreclosure. While we recognize that no vendor's lien was present, we disagree with the result reached by the court of appeals.
It is unquestioned that an owner of land may contract with respect to their property as they see fit, provided the contracts do not contravene public policy. Goodstein v. Huffman, 222 S.W.2d 259, 260 (Tex.Civ.App.Dallas 1949, writ ref'd). Therefore, the developer of the subdivision, as owner of all land subject to the declaration, is entitled to create liens on his land to secure the payment of assessments. Cf. Hodges v. Roberts, 74 Tex. 517, 519-20, 12 S.W. 222, 223 (1889). The declarations in question provided that the assessments "shall be secured by a continuing vendor's lien." It does not seem likely that a true vendor's lien exists in the present case because the assessment charges were not part of the purchase price of the property. Furthermore, there is no deed of trust which would have acknowledged the prior lien. Lifemark Corp. v. Merritt, 655 S.W.2d 310, 313 (Tex.App.Houston [14th Dist.] 1983, writ ref'd n.r.e.). Much more probable is its existence as a contractual lien, as several older decisions hold that a contractual lien will be enforced regardless of the fact that it was improperly designated as a "vendor's lien." E.g. Maryland Casualty Co. v. Willig, 10 S.W.2d 415, 419 (Tex.Civ.App.Waco 1928, writ ref'd).
Creation of a contractual lien depends only on evidence apparent from the language of the agreement that the parties intended to create a lien. Dabney v. Schutze, 228 S.W. 176, 177 (Tex.Comm'n App.1921, judgmt adopted). Furthermore, under Moore v. Smith, 443 S.W.2d 552 (Tex.1969), this court must consider the assessment provisions and lien as a whole and must not overthrow the clear and explicit intentions of the parties. See Cartwright v. Trueblood, 90 Tex. 535, 39 S.W. 930, 932 (1897). It seems clear from the language used in the agreement that the owner intended to provide for such liens, and we would be remiss in not conforming this decision to such an intent. With this decision made we turn to the crux of this case; the effect of Texas homestead law on the lien in question.
As a general rule, a homestead is protected against all debts of those who live in that homestead. The only debts which may be collected by foreclosure on the homestead are delineated in Article XVI, § 50 of the Texas Constitution. That section provides:
The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale for the payment of all debts except for the purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case, only when the work and material are contracted for in writing. . . . No mortgage, trust deed or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse. . . .
TEX. CONST. Art. XVI, § 50 (1845, amended 1973).
Since the early days of Texas jurisprudence, it has been expressed that the homestead exemption was founded on principles of soundest policy ... Its design *635 was not only to protect citizens and their families from destitution, but also to cherish and support in bosoms of individuals, those feelings of sublime independence which are so essential to maintenance of free institutions.
Franklin v. Coffee, 18 Tex. 413, 416 (1857). This court has often said that interpretation of the homestead laws are to be made liberally. E.g. Cocke v. Conquest, 120 Tex. 43, 35 S.W.2d 673, 678 (1931). Homestead rights, however, may not be construed so as to avoid or destroy pre-existing rights. Minnehoma Financial Co. v. Ditto, 566 S.W.2d 354, 357 (Tex.Civ.App.Fort Worth 1978, writ ref'd n.r.e.). It has long been held that an encumbrance existing against property cannot be affected by the subsequent impression of the homestead exception on the land. Farmer v. Simpson, 6 Tex. 303, 310 (1851). As said by this court many years ago, "[A] previously acquired lien, whether general or special, voluntary or involuntary, cannot be subsequently defeated by the voluntary act of a debtor in attempting to make property his homestead." Gage v. Neblett, 57 Tex. 374, 378 (1882). Thus, we reaffirm that when the property has not become a homestead at the execution of the mortgage, deed of trust or other lien, the homestead protections have no application even if the property later becomes a homestead.
Thus, this case revolves around when the lien attached on the property. If it occurred simultaneously to or after the homeowners took title, there is authority which would deem the homestead right superior. See Freiberg v. Walzem, 85 Tex. 264, 20 S.W. 60, 61 (1892). On the other hand, if the lien attached prior to the claimed homestead right and the lien is an obligation that would run with the land, there would be a right to foreclose.
In Texas, a covenant runs with the land when it touches and concerns the land; relates to a thing in existence or specifically binds the parties and their assigns; is intended by the original parties to run with the land; and when the successor to the burden has notice. Westland Oil Devel Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 910-11 (Tex.1982); Williams, Restrictions on the Use of Land; Covenants Running with the Land at Law, 27 Tex.L. Rev. 419, 423 (1949). The covenant to pay maintenance assessments for the purpose of repairing and improving the common areas and recreational facilities of Inwood North touches and concerns the land. See 5 R. POWELL, THE LAW OF REAL PROPERTY § 673[2] at 60-46 (15th ed. 1986) (a covenant to pay for the maintenance of subdivision facilities both benefits and burdens the property of each individual landowner, thus, it runs with the land); see also RESTATEMENT OF PROPERTY § 537 at 3224 (1944). The Declaration of Covenants evidences the intent of the original parties that the covenant run with the land, and the covenant specifically binds the parties, their successors and assigns. Because the property in question was conveyed in a succession of fee simple estates, the requirement of privity is satisfied. Westland Oil, 637 S.W.2d at 910-11. Consequently, the covenant in question satisfies the requirements of a covenant running with the land. Furthermore, the deeds signed by each of the homeowners made reference to the assessments that would be due, thus each of the homeowners had notice of what their obligations were, and a purchaser with constructive notice of restrictive covenants becomes bound by them. Selected Lands Corp. v. Speich, 702 S.W.2d 197, 199-200 (Tex.App.Houston [1st Dist.] 1985, writ ref'd n.r.e.). Moreover, a purchaser is bound by the terms of instruments in his chain of title. Cooksey v. Sinder, 682 S.W.2d 252, 253 (Tex.1984). Therefore, as the homeowners had constructive notice of the lien and foreclosure provisions in the declarations, they are bound by them.
The record discloses that the liens were contracted for several years before the homeowners took possession of their houses. Because the restrictions were placed on the land before it became the homestead of the parties, and because the restrictions contain valid contractual liens which run with the land, the homeowners were subject to the liens in question and an *636 order of foreclosure would have been proper.[1]
Furthermore, a second and equally important theory supports our holding today. A homestead right in real property cannot rise any higher than the right, title or interest acquired by the homestead claimant. Sayers v. Pyland, 139 Tex. 57, 161 S.W.2d 769, 773 (1942). A homestead may attach to an interest less than an unqualified fee simple title. A homestead may attach to any possessory interest, subject to the inherent characteristics and limitations of the right, title or interest in the property. Gann v. Montgomery, 210 S.W.2d 255, 258 (Tex.Civ.App. Ft. Worth 1948, writ ref'd n.r.e.). The homestead, however, will not operate to circumvent an inherent characteristic of the property acquired. Sayers, 161 S.W.2d at 773. The concept of community association and mandatory membership is an inherent property interest. The declaration defines the rights and obligations of property ownership. The mutual and reciprocal obligation undertaken by all purchasers in Inwood Homes creates an inherent property interest possessed by each purchaser. The obligation to pay association dues and the corresponding right to demand that maximum services be provided within the association's budget are characteristics of that property interest. Moreover, the right to require that all property owners pay assessment fees is an inherent property right. That no owner has to pay more than a pro rata share is an essential characteristic of the property interest.
We see no distinction in pro rata fee simple ownership of common elements and in pro rata common ownership in an association, mandated by the declaration, which owns the common elements. The function of the association, with its attendant responsibilities, is the same in Inwood North as in Johnson v. First Southern Properties, Inc., 687 S.W.2d 399 (Tex.App.Houston [14th Dist.] 1985, writ ref'd n.r.e.)[2]
The purchase of a lot in Inwood Homes carries with the purchase, as an inherent part of the property interest, the obligation to pay association fees for maintenance and ownership of common facilities and services. The remedy of foreclosure is an inherent characteristic of the property right. It is generally the only method by which other owners will not be forced to pay more than their fair share or be forced to accept reduced services. If we were not dealing with a homestead, no one would have a problem declaring that a lien exists to secure the payment of the Homeowners' Association assessments. Our focus in this case has been on whether the lien is enforceable against a homestead claim. In making that determination, we have considered the debt, the lien, the homestead claim, and the property interest to which the homestead attached. In so doing, we have found the lien in the present case to *637 be superior, and worthy of protection against the homestead claim.
In conclusion, we hold that under the facts in the present case, the Homeowners' Association is entitled to the foreclosure of the contractual lien it has on the houses of delinquent owners. We recognize the harshness of the remedy of foreclosure, particularly when such a small sum is compared with the immeasurable value of a homestead. Under the laws of this state, however, we are bound to enforce the agreements into which the homeowners entered concerning the payment of assessments. Thus, the judgments of the trial court and court of appeals are reversed and we remand this cause to the trial court so that it may issue an order of foreclosure consistent with this opinion.
MAUZY, J., dissents in an opinion joined by GONZALEZ, J.
MAUZY, Justice, dissenting.
I respectfully dissent. The court herein has created a remedy in the name of "public policy" in direct contravention of the Constitution of this State. I would affirm the judgments of the trial court and the court of appeals, which refused to allow the homeowners' association to foreclose on homestead property in order to collect past due neighborhood assessments.
Article XVI, section 50 of the Texas Constitution provides:
The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale for the payment of all debts except for the purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case, only when the work and material are contracted for in writing. . . . No mortgage, trust deed or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married.
TEX. CONST. Art. XVI, § 50 (1845, amended 1973) (emphasis added). "All debts," as used in the foregoing passage of the Constitution, means precisely that; i.e., homestead property is exempt from forced sale for the payment of all debts except in the three constitutionally enumerated instances. The exceptions are: (1) for the payment of the homestead's purchase money; (2) for unpaid taxes; and (3) for labor and materials utilized in the improvement of homestead property. The Constitution specifies the types of indebtedness for which there may be a valid lien; liens for any other purpose are invalid. TEX. CONST. Art. XVI, § 50; Lincoln v. Bennett, 138 Tex. 56, 61, 156 S.W.2d 504, 506 (1941).
Applying the exceptions to the instant cause, maintenance assessments do not constitute part of the property's purchase money; are not taxes, and are not monies for labor and materials for the construction of improvements on the land. Thus, pursuant to the Constitution, homestead property may not be the subject of a forced sale for sums owing for maintenance assessments.
The legislature further has provided: A homestead ... [is] exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property. Encumbrances may be properly fixed on homestead property for: (1) purchase money; (2) taxes on the property; or (3) work and material used in constructing improvements on the property if contracted for in writing ...
TEX.PROP.CODE § 41.001(a), (b)(1-3) (Vernon's Supp.1987). Thus, the legislature has tracked the Constitution and permitted creditors in only three distinct categories to foreclose against homestead property for the payment of debt. As stated in the Constitution, no other lien is valid. TEX. CONST. Art. XVI, § 50.
A review of the history of the homestead exemption in Texas makes the matter as clear and bright as the Texas sky at night; the public policy of this State has been and *638 is to protect homestead property from creditors' claims. The homestead exemption itself is a Texas creation; the earliest homestead exemption law was the Statute of January 26, 1839 (Laws of the Republic of Texas, First Session of the Third Congress, 1839, pp. 125-126). TEX. CONST. Art. XVI, § 50, interp. commentary (Vernon 1955). The passage of the Statute of January 26, 1839, was the direct result of the United States Panic of 1837 and the economic depression that followed. Throughout the nation, families lost homes and farms; in Texas "business became stagnate [sic], money scarce, and credit unobtainable." TEX. CONST. Art. XVI, § 50, interp. commentary. Texans were familiar with chattel exemptions for family clothing, furniture, and the tools or implements of the family's wage earner, which, while under Spanish colonial law and the law of Mexico, could not be attached for the forced payment of debt. As the authors of the interpretative commentaries to the Texas Constitution of 1876 note: "it was no great step to extend the concept underlying these chattel exemptions to the family home and land." The drafters of this State's first Constitution, "determined to safeguard the homestead by putting it beyond the reach of legislators as well as creditors by incorporating an exemption provision in the constitution."[1] TEX. CONST. Art. XVI, § 50, interp. commentary. The homestead exemption was carried forward in the Constitutions of 1861 and 1866. The Constitution of 1869 saw major changes in the exemption. The three circumstances in which a homestead may be foreclosed were added; i.e., "for the purchase thereof, for the taxes assessed thereon, or for labor and materials expended thereon ... ".[2]
Again in 1876, the language of the homestead provision changed substantially. The legislature's "power" and "duty" to protect the homestead from forced sale of "any" debt was deleted; that language was replaced with a direct pronouncement that the family homestead "shall be and is hereby protected from forced sale, for payment of all debts. . . ." Further, and with the obvious intent to make the homestead's protective policy abundantly clear, the Constitution of 1876 also included the language: "No mortgage, trust deed, or other lien on the homestead shall ever be valid." TEX. CONST. Art. XVI, § 50.[3]
*639 Since the passage of the 1876 Constitution to date, only one amendment to Article XVI, section 50 has been proposed by either the House of Representatives or the Senate, and that amendment was adopted in 1973 and remains the law. The 1973 amendment included "single adult" persons as a class whose homesteads are protected.[4] The protective mantle of the Constitution has guarded homestead property in this State since 1845; since 1876 the extent of that protection has been clear; i.e., no lien other than one for taxes, purchase money, or labor and materials for home improvements is valid.
The court's reliance herein on other jurisdictions is misplaced. Florida's constitution allows foreclosure under the same three circumstances as in Texas; i.e., for payment of taxes, purchase money, and improvements.[5] FLA. CONST. Art. X, § 4 (1968, amended 1984). However, the Texas Constitution, unlike its Florida counterpart, contains the additional proviso that no "other lien on the homestead shall ever be valid." TEX. CONST. Art. XVI, § 50. The difference results in a major distinction. In Florida, the constitutional prohibition against the forced sale of homestead property is a prohibition against the use of process for that purpose; it does not invalidate the debt or the lien but, under certain circumstances, merely takes priority over the debt or lien. Bennett v. Behring Corp., 466 F.Supp. 689 (D.C.1979); Point East One Condominium Corp. Inv. v. Point East Developers, Inc., 348 So.2d 32 (Fla.App.1977). By contrast, in Texas, a lien other than one of the three enumerated in the Constitution is invalid. TEX. CONST. Art. XVI, § 50.
This court also relies on the decisions of Arkansas, Alabama and Mississippi for the proposition that a lien for assessments is valid. In upholding a lien for property assessments, the Supreme Court of Arkansas, in Kell v. Bella Vista Village Property Owners Association, 258 Ark. 757, 528 *640 S.W.2d 651, 653 (1975), found that the language in the property's declarations providing for assessments was "equally as strong and specific as a mortgage provision extending the lien thereof to future advances, and we can see no reason why the language employed should not be considered as creating a continuing lien on the property for future assessments." However, the Constitution of Arkansas, unlike the Constitution of this State, does not prohibit "any other lien" against the homestead.[6] In Boyle v. Lake Forest Property Owners Association, Inc., 538 F.Supp. 765, 767 (S.D.D.C.Ala.1982), the Alabama district court did not reach the issue of whether homestead property could be foreclosed for failure to pay assessments; the property therein was investment property. Lastly, in Mississippi, homesteads are not constitutionally protected; rather, homestead protections are creatures of the legislature.[7] Further, Mississippi's Code specifically provides that property may be subject to forced sale for "nonpayment of taxes or assessments." MISS.CODE ANN. § 85-3-47 (1972) (emphasis added).
The court herein debates whether the purported lien is contractual in nature or rather, a covenant that runs with the land, and has found the duty to pay assessments at Inwood North is a covenant that runs with the land. Irrespective of whether the purported lien for assessments is a covenant or is contractual in nature, if foreclosure of a homestead is the remedy for failure to pay those assessments, then the purported lien must meet constitutional muster. When clearly violative of the Constitution, the lien is void.
This court long has recognized that a lien against the homestead cannot be made valid by agreement between the parties. Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 89, 13 S.W. 12, 13 (1890). In Blalock, the issue was whether a valid lien attached on homestead property for a second mortgage. *641 The homeowner and the loan company entered into such an agreement, and the homeowner declared the property was not homestead in character and promised not to sell the property until the loan was repaid. This court held:
The Constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife made orally or in writing contrary to the fact. To hold otherwise would practically abrogate the Constitution.
If property be homestead in fact and law, lenders must understand that liens can not be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead contrary to the fact will enable parties to evade the law and encumber homesteads with liens forbidden by the Constitution.
Texas Land & Loan Co. v. Blalock, 76 Tex. at 89, 13 S.W. at 13.
Assuming, arguendo, the duty to pay assessments is a covenant that runs with the land, a failure to pay gives rise to a debt for which judgment may be had against the debtor. This court contends that the lien attached prior to the property acquiring homestead character. If the purported lien attached at all, it did so simultaneously with the property's purchase. When a lien arises simultaneously in time to the impression of homestead character on the land, then the homestead character of the property is superior. Frieberg v. Walzem, 85 Tex. 264, 267, 20 S.W. 60, 61 (1892). Further, even when an abstract of judgment has been filed, recorded and indexed, the purchaser's intent, formed at the time the property was acquired, to use it as homestead, "render[s] the property exempt from the judgment lien." Frieberg v. Walzem, 85 Tex. at 267, 20 S.W. at 61. Even if a lien to pay assessments runs with the land, the judgment ordering foreclosure arises after the property has acquired homestead status. Thus, a judgment lien attaching after the property has been designated homestead is invalid. Gage v. Neblett, 57 Tex. 374, 376-377 (1882); Farmer v. Simpson, 6 Tex. 303, 309-310 (1851).
The Constitution declares no other lien "shall ever be valid." TEX. CONST. Art. XVI, § 50. "What cannot `ever be valid,' is never valid, and what is never valid, is always void." Inge v. Cain, 65 Tex. 75, 79 (1885). The public policy of this State since before statehood has been to construe the constitutional homestead provision liberally in favor of the exemption and against forced sale. Inge v. Cain, 65 Tex. at 79; Gage v. Neblett, 57 Tex. at 376. For this court to allow foreclosure for past due maintenance assessments is to create judicially a fourth exception to Article XVI, § 50 of the Constitution, which this court is not empowered to do.
The language of the constitution is that "no mortgage, ... whether created by the husband alone or together with his wife, shall ever be valid," ... and does not in any way distinguish or make exception as to who[m] may be the mortgagee,none are contemplated in fact; and the courts have no power to ingraft any such exception upon that instrument, the effect of which would be to attempt to amend the constitution by judicial interpretation.
Madden v. Madden, 79 Tex. 595, 600, 15 S.W. 480, 482 (1891).
The developer, or the association, is a general creditor who, pursuant to Article XVI, section 50 of the Constitution and section 41.001 of the Property Code, must stand in line along with Mastercard, Montgomery Ward and the local plumber for payment of sums due and owing. The developer and/or the homeowners' association has no superior right in homestead property for property assessments. To hold otherwise is an abrogation of the Constitution of this State.
If the Constitution is to be amended to destroy or weaken an individual's homestead exemption, it should be done as prescribed by the Constitution in article XVII, section 1. What is required is passage of a *642 proposed amendment by at least 100 affirmative votes of the members of the House of Representatives and at least twenty-one affirmative votes of the members of the Senate, and a majority vote of all the people of this State who choose to vote at a public election held for that purpose. TEX. CONST. Art. XVII, § 1 (1845, amended 1972). A strict construction of our Constitution requires this result. I would require no less.
As a final note, it is unfortunate that this court has no procedures to appoint counsel to permit or require the strenuous advocacy necessary to protect the constitutional protection heretofore provided to homesteads. The rule announced today by the majority affects the homestead protection against forced sale of every person in this State. This is not merely a private dispute between two litigants regarding the collection of a private debt. This court should, at the very least, provide for a pauper's funeral if it insists on burying the body of constitutional protection against forced sale of homesteads. In effect, this case has been tried ex parte. The named defendant-debtors, although served, never appeared nor answered. They made no appearance or answer in the court of appeals. No one appeared before this court to assert the constitutional protection we all were taught in law school years, yea decades ago. This sacred constitutional protection should not be sacrificed on the altar of economic gain for the few at the expense of the multitude without at least the semblance of due process. If our constitutional rights and liberties are to be taken from us one at a time, let us at least have the common courtesy to give those heretofore precious and cherished rights and liberties a respectful hearing before they are snatched from us and succeeding generations, as yet unborn, who have no voice and no advocate.
GONZALEZ, J., joins in this dissenting opinion.
NOTES
[1] In reaching this decision we are mindful of the decisions of several other states which have chosen to uphold homeowners' associations' rights to foreclose for delinquent assessments. While we recognize that the decisions of these other jurisdictions are arguably distinguishable for one reason or another, we note that no reported case in any jurisdiction has reached anything other than the result we announce today. See Boyle v. Lake Forest Property Owners Ass'n, Inc., 538 F.Supp. 765, 769 (S.D.Ala.1982); Bessemer v. Gersten, 381 So.2d 1344, 1348 (Fla. 1980); Kelt v. Bella Vista Village Property Owners Ass'n, 258 Ark. 757, 528 S.W.2d 651, 653 (1975); William H. Bond, Jr. & Assoc., Inc. v. Lake O' The Hills Maintenance Ass'n, 381 So.2d 1043, 1044 (Miss.1980). Of particular importance is Bessemer, as it involved very similar facts to the present case. In Bessemer, the Florida Supreme Court held that the homeowners "in accepting the deed with actual or constructive notice of the lien provisions of the declaration of restrictions, manifests the intent to let the real property stand as security for the debt." Bessemer at 1348. The court thereafter allowed foreclosure, saying

[T]he creation of the lien by acceptance of the deed relates back to the time of the filing of the declaration of restrictions. Thus, with regard to the time of attachment of the lien, this case is to be treated as if the respondents (homeowners) had taken title subject to a valid pre-existing lien. Since the acquisition of homestead status does not defeat prior liens ... the lienor's right prevails over the respondent's homestead right. Bessemer at 1348.
[2] For an analysis of Johnson and applicable homestead principles, see Note, The Texas Homestead and Condominium Assessments, 38 Baylor L.Rev. 987 (1986).
[1] The Constitution of 1845 provided:

The Legislature shall have power to protect by law from forced sale, a certain portion of the property of all heads of families. The homestead of a family not to exceed two hundred acres of land, (not included in a town or city,) or any town or city lot or lots, in value not to exceed two thousand dollars, shall not be subject to forced sale, for any debts hereafter contracted, nor shall the owner, if a married man, be at liberty to alienate the same, unless by the consent of the wife, in such manner as the Legislature may hereafter point out. TEX. CONST. Art. VII, § 22 (1845).
[2] The Constitution of 1869 provided:

The Legislature shall have power, and it shall be their duty, to protect by law, from forced sale, a certain portion of the property of all heads of families. The homestead of a family, not to exceed two hundred acres of land, (not included in a city, town, or village,) or any city, town or village lot, or lots, not to exceed five thousand dollars in value, at the time of their destination [sic] as a homestead, and without reference to the value of any improvements thereon, shall not be subject to forced sale for debts, except they be for the purchase thereof, for the taxes assessed thereon, or for labor and materials expended thereon; nor shall the owner, if a married man, be at liberty to alienate the same, unless by the consent of the wife, and in such manner as may be prescribed by law.
TEX. CONST. Art. XII, § 15 (1869).
[3] The Constitution of 1876 provided:

The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void.
TEX. CONST. Art. XVI, § 50 (1876).
[4] The 1973 amendment to the Constitution's homestead provision provides: The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead; nor may the owner or claimant of the property claimed as homestead, if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void. This amendment shall become effective upon its adoption.

TEX. CONST. Art. XVI, § 50.
[5] The Florida Constitution provides:

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family;
(2) personal property to the value of one thousand dollars.
(b) These exemptions shall inure to the surviving spouse or heirs of the owner.
(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse. If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.
[6] The Constitution of Arkansas permits the forced sale of a homestead for purchase money, improvements, taxes, and trust monies:

The homestead of any resident of this State who is married or the head of a family shall not be subject to the lien of any judgment, or decree of any court, or to sale under execution or other process thereon, except such as may be rendered for the purchase money or for specific liens, laborers' or mechanics' liens for improving the same, or for taxes, or against executors, administrators, guardians, receivers, attorneys for moneys collected by them and other trustees of an express trust for moneys due from them in their fiduciary capacity.
ARK. CONST. Art. IX, § 3 (1874). Arkansas also exempts from forced sale the homestead of surviving widows and children:
If the owner of a homestead die, leaving a widow, but no children, and said widow has no separate homestead in her own right, the same shall be exempt, and the rents and profits thereof shall vest in her during her natural life, provided that if the owner leaves children, one or more, said child or children shall share with said widow and be entitled to half the rents and profits till each of them arrives at twenty-one years of ageeach child's right to cease at twenty-one years of ageand the shares to go to the younger children, and then all to go to the widow, and provided that said widow or children may reside on the homestead or not; and in case of the death of the widow all of said homestead shall be vested in the minor children of the testator or intestate.
ARK. CONST. Art. IX, § 6.
[7] Mississippi's Constitution provides:

The legislature shall never create by law any distinction between the rights of men and women to acquire, own, enjoy, and dispose of property of all kinds, or their power to contract in reference thereto. Married women are hereby fully emancipated from all disability on account of coverture. But this shall not prevent the legislature from regulating contracts between husband and wife; nor shall the legislature be prevented from regulating the sale of homesteads.
MISS. CONST. Art. IV, § 94 (1869, amended 1972) (emphasis added). The Mississippi legislature has declared certain property is not exempt from execution:
Property shall not be exempt from execution when the purchase-money thereof forms, in whole or in part, the debt on which the judgment is founded; but if the judgment be not in whole for purchase-money, and the execution be levied on property exempt but for the provisions hereof, and the exemptionist pay or tender the amount of purchase-money included in the judgment before sale, the property shall be released; nor shall any property be exempt from sale for nonpayment of taxes or assessments, or for any labor done thereon, or materials furnished therefor, or when the judgment is for labor performed or upon a forfeited recognizance or bail bond.
MISS.CODE ANN. § 85-3-47 (1972).