# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

August 25, 2004

The Honorable Eugene D. Taylor
Williamson County Attorney
Williamson County Courthouse Annex
Second Floor
405 Martin Luther King, Box 7
Georgetown, Texas 78626

Opinion No. GA-0237

Re: Whether liens for public improvement district assessments levied against property that was not a homestead at the time of assessment may be enforced by foreclosure even though the property has become a homestead between the date of assessment and the date of the enforcement action (RQ-0187-GA)

Dear Mr. Taylor:

You ask whether liens assessed by a public improvement district against property that was not a homestead at the time of assessment may be enforced by foreclosure even though the property has become a homestead between the date of assessment and the date of the enforcement action.[1]

## I.     Legal Background

### A.     Statutory Lien Created by Chapter 372 of the Local Government Code

Chapter 372 of the Local Government Code, the Public Improvement District Assessment Act, authorizes counties and municipalities to establish public improvement districts ("districts" or "PIDs") to undertake public improvements upon receiving a petition requesting that a district be established. *See* TEX. LOC. GOV'T CODE ANN. §§ 372.001 (Vernon 1999) (short title), 372.002 (Vernon Supp. 2004) (municipal and county powers), 372.005 (Vernon Supp. 2004) (requisites for petition). If the governing body of a municipality or county finds that a proposed improvement project would promote the interests of the municipality or county, "the governing body may undertake an improvement project that confers a special benefit on a definable part of the municipality or county or the municipality's extraterritorial jurisdiction." *Id.* § 372.003(a) (Vernon Supp. 2004). A public improvement project may include such items as landscaping, roadways, pedestrian malls, libraries, parking facilities, mass transportation facilities, water, wastewater, or drainage facilities or improvements, or parks. *See id.* § 372.003(b). A PID may be established and improvements financed only after the governing body provides notice and holds a public hearing on

---

[1]Letter from Honorable Eugene D. Taylor, Williamson County Attorney, to Honorable Greg Abbott, Texas Attorney General (Feb. 19, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

the improvement's advisability and a majority of the body votes to approve the district. *See id.* §§ 372.009(a)-(b) (hearing), (c) (notice), 372.010 (majority vote on improvement order).

After a PID has been established, "[t]he governing body of the municipality or county shall apportion the cost of an improvement to be assessed against property in an improvement district. The apportionment shall be made on the basis of special benefits accruing to the property because of the improvement." *Id.* § 372.015(a). After holding a hearing on a proposed assessment, the governing body "by ordinance or order shall levy the assessment as a special assessment on the property." *Id.* § 372.017(b); *see also id.* §§ 372.016 (requiring assessment roll, notice, and hearing), 372.017(a) (requiring governing body to hear objections to proposed assessments). In addition, after notice and a hearing, a governing body may make a supplemental assessment to correct omissions or mistakes in the assessment relating to the total cost of the improvement. *See id.* § 372.019 ("Notice must be given and the hearing held under this section in the same manner as required by Sections 372.016 and 372.017."). And a governing body may make a reassessment or new assessment of a parcel of land if (i) a court of competent jurisdiction sets aside an assessment against the parcel; (ii) the governing body determines that the original assessment is excessive; or (iii) on the written advice of counsel, the governing body determines that the original assessment is invalid. *See id.* § 372.020.

Significantly, section 372.018(b) of the Local Government Code provides that an assessment is a lien against the property assessed:

> An assessment or reassessment, with interest, the expense of collection, and reasonable attorney's fees, if incurred, *is a first and prior lien against the property assessed*, superior to all other liens and claims except liens or claims for state, county, school district, or municipality ad valorem taxes, and is a personal liability of and charge against the owners of the property regardless of whether the owners are named. The lien is effective from the date of the ordinance or order levying the assessment until the assessment is paid and may be enforced by the governing body in the same manner that an ad valorem tax lien against real property may be enforced by the governing body. Delinquent installments of the assessment shall incur interest, penalties, and attorney's fees in the same manner as delinquent ad valorem taxes. The owner of assessed property may pay at any time the entire assessment, with interest that has accrued on the assessment, on any lot or parcel.

*Id.* § 372.018(b) (emphasis added).[2]

---

[2]Section 51.008 of the Property Code generally requires that a statutory lien in favor of a governmental entity must be recorded in county real property records. *See* TEX. PROP. CODE ANN. § 51.008(a) (Vernon Supp. 2004). However, section 51.008 does not apply if "(1) the lien is imposed as a result of failure to pay: (A) ad valorem taxes; or (B) a penalty or interest owed in connection with those taxes; or (2) the law establishing the lien expressly states that

(continued...)

**B.      Article XVI, section 50 of the Texas Constitution and Attorney General Opinion JC-0386**

Article XVI, section 50 of the Texas Constitution protects a homestead from forced sale for the payment of debts, with certain exceptions. It provides in pertinent part:

> (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:
>
>> (1) the purchase money thereof, or a part of such purchase money; [or]
>>
>> (2) the taxes due thereon . . . .

TEX. CONST. art. XVI, § 50. In Attorney General Opinion JC-0386 this office concluded that a homestead may not be subject to forced sale for the nonpayment of PID assessments under the "taxes due thereon" clause of article XVI, section 50, because PID assessments are not taxes for purposes of that provision. *See* Tex. Att'y Gen. Op. No. JC-0386 (2001). As the opinion noted,

> The words "tax," "taxes," and "taxation" in the Texas Constitution, used without a qualifying word, mean ad valorem tax, taxes, or taxation. *See* [*Taylor v. Boyd*, 63 Tex. 533, 541 (1885).] Ad valorem taxes are annually collected for the ordinary purposes of municipal government and are based on an estimation of the value of the entire taxable property in a city, from which an estimate is made of the percent of taxation of this value that will raise the sum necessary to meet the "current annual want." *Id.* at 540. In contrast, assessments are charges imposed for purposes that do not require that they be imposed annually, or with reference to time. *See id.* They are not usually based upon a percentage of the value of the taxable property of a city, but upon the real or supposed benefit resulting from the improvement of the property on which the specific charge is laid.

*Id.* at 4. Relying on Supreme Court of Texas cases holding that a special assessment is not a "tax" within article XVI, section 50 of the Texas Constitution, *City of Wichita Falls v. Williams*, 26 S.W.2d 910, 915 (Tex. 1930), and *Higgins v. Bordages*, 31 S.W. 52, 55 (Tex. 1895), the opinion concluded:

---

[2](...continued)
recording the lien is not required." *Id.* § 51.008(a)(1)-(2). In addition, it does not apply to "(1) a lien created under Section 89.083, Natural Resources Code; (2) a state tax lien under Chapter 113, Tax Code; or (3) a lien established under Chapter 61 or 213, Labor Code." *Id.* § 51.008(c). You have not asked or briefed whether a statutory lien created by section 372.018(b) of the Local Government Code is subject to section 51.008 of the Property Code's recording requirement, and we do not address the issue here.

> A homestead is not subject to forced sale to collect the assessments against it. A homestead may not be subjected to forced sale for nonpayment of a public improvement district assessment under the "taxes due thereon" clause of article XVI, section 50 of the Texas Constitution.

Tex. Att'y Gen. Op. No. JC-0386 (2001) at 4 (citations omitted).

## II.     Analysis

As background to your request, you note that the legislature in 2001 amended chapter 372 of the Local Government Code to authorize counties to establish PIDs. *See* Request Letter, *supra* note 1, at 1. In researching chapter 372 for your county, you reviewed Attorney General Opinion JC-0386. You note that while that opinion concluded that a homestead may not be subject to forced sale for the nonpayment of PID assessments under the "taxes due thereon" clause of article XVI, section 50, the opinion does not address "the enforceability of a PID assessment lien ordered *before* a homestead exemption is established, as distinct from [a PID lien on] property that is already a homestead at the time of assessment." *Id.*

As you point out, in some cases a district will be created and assessments levied before property is developed as a subdivision and sold as multiple lots owned as homesteads: "The district and the developer who owns the unimproved land are already contractually obligated to pay the lenders the full amount of the assessment before any homesteads are created in the district. That debt is secured by the statutory assessment lien against all the property in the district." *Id.* at 2. You posit a situation in which, "[a]t the time the homeowners establish their homestead, the liens guaranteeing repayment are already in place and the owners expressly acquire title *subject to the liens*." *Id.* at 2. Given this possible scenario, you ask us to address the following question:

> Are liens assessed by a public improvement district against property that was *not* subject to the constitutional and statutory homestead exemption at the time of the assessment enforceable by forced sale, even though the property may have become a homestead between the date of the assessment and the date of the enforcement action?

*Id.* at 1.

In *Inwood North Homeowners' Association, Inc. v. Harris*, 736 S.W.2d 632 (Tex. 1987), the Supreme Court of Texas addressed whether the homestead laws of Texas protect the homeowners against foreclosure for their failure to pay neighborhood assessments imposed by the developer. Several homeowners had purchased lots in a subdivision subject to a declaration providing that all lots within the subdivision "were impressed with certain covenants and restrictions" that would "run with the land and be binding upon all parties acquiring rights to any of the property." *Id.* at 633. The declaration included the covenant that lot owners agreed to pay annual assessments. *Id.*

After concluding that the covenants created contractual liens, the court then considered the extent to which constitutional homestead protection applied. *Id.* at 634. The court noted that as a general rule, article XVI, section 50 protects homesteads against all debts except those specifically listed. *Id.* Importantly, however, the court also observed that homestead rights

> may not be construed so as to avoid or destroy pre-existing rights. *Minnehoma Financial Co. v. Ditto*, 566 S.W.2d 354, 357 (Tex. Civ. App.–Fort Worth 1978, writ ref'd n.r.e.). It has long been held that an encumbrance existing against property cannot be affected by the subsequent impression of the homestead exception on the land. *Farmer v. Simpson*, 6 Tex. 303, 310 (1851). As said by this court many years ago, "[A] previously acquired lien, whether general or special, voluntary or involuntary, cannot be subsequently defeated by the voluntary act of a debtor in attempting to make property his homestead." *Gage v. Neblett*, 57 Tex. 374, 378 (1882).

*Id.* at 635. The court "reaffirm[ed] that when the property has not become a homestead at the execution of the mortgage, deed of trust or other lien, the homestead protections have no application even if the property later becomes a homestead." *Id.* For this reason, the homeowners' rights depended on when the lien attached to the property:

> If it occurred simultaneously to or after the homeowners took title, there is authority which would deem the homestead right superior. *See Freiberg v. Walzem*, 85 Tex. 264, 20 S.W. 60, 61 (1892). On the other hand, if the lien attached prior to the claimed homestead right and the lien is an obligation that would run with the land, there would be a right to foreclose.

*Id.* The court noted that in Texas, "a covenant runs with the land when it touches and concerns the land; relates to a thing in existence or specifically binds the parties and their assigns; is intended by the original parties to run with the land; and when the successor to the burden has notice." *Id.* (citations omitted).

The court found that the covenants to pay assessments satisfied each of these criteria, and the homeowners' deeds made specific reference to the assessments. *Id.* "Because the restrictions were placed on the land before it became the homestead of the parties, and because the restrictions contain valid contractual liens which run with the land," the court concluded that "the homeowners were subject to the liens in question and an order of foreclosure would have been proper." *Id.* at 635-36.

Importantly, the *Inwood* court also held that a second theory supported its holding – the idea that "[a] homestead right in real property cannot rise any higher than the right, title or interest acquired by the homestead claimant." *Id.* at 636. The court articulated the rule that although a homestead may attach to an interest less than an unqualified fee simple title, the homestead "will not operate to circumvent an inherent characteristic of the property acquired." *Id.*

Finally, we note that the court recently held that foreclosure is not an appropriate remedy to enforce homeowners' association late fees that were not included in the deed restrictions. *See Brooks v. Northglen Ass'n*, 47 Tex. Sup. Ct. J. 719, 2004 WL 1439643, *11 (June 25, 2004) ("[T]he restrictions did not provide any notice that a late fee would be imposed in addition to the interest charge. As a result, the property owners did not have notice of the late charge. Therefore, in light of *Inwood's* notice requirement, foreclosure is not an appropriate remedy for a failure to pay the late charge.") (citing Tex. Att'y Gen. LO-97-019 with approval). Thus, when enforcing a lien that predates a homestead, foreclosure is available only for amounts that are within the lien's scope. *See id.*; *see also* Tex. Att'y Gen. LO-97-019, at 4 ("Whether a property owners' association may foreclose on a homestead to collect the costs . . . will depend upon whether the lien for those costs (i) attached to the property prior to the homestead right and (ii) is the result of a restriction that runs with the land. . . . . [T]he determination whether a lien for costs incurred by a property owners' association relating to violations of the subdivision's restrictions or the property owners' association's bylaws and rules preexisted a homestead right will depend upon the terms of the applicable restrictions and whether the assessment of these costs is contemplated by an existing lien under the restrictions or creates a new lien.").

Your question involves a statutory lien created by section 372.018 of the Local Government Code as opposed to a developer's contractual lien. Section 372.018 provides that "[a]n assessment or reassessment, with interest, the expense of collection, and reasonable attorney's fees, if incurred, *is a first and prior lien against the property assessed*, superior to all other liens and claims except liens or claims for state, county, school district, or municipality ad valorem taxes." TEX. LOC. GOV'T CODE ANN. § 372.018(b) (Vernon Supp. 2004) (emphasis added). The lien "may be enforced by the governing body in the same manner that an ad valorem tax lien against real property may be enforced by the governing body." *Id.*

Your specific question is whether "liens assessed by a public improvement district against property that was *not* . . . [a] homestead . . . at the time of the assessment [may be enforced by foreclosure even though the property has become a homestead] between the date of the assessment and the date of the enforcement action." Request Letter, *supra* note 1, at 1. A municipality or county may enforce a section 372.018 lien against a homestead by foreclosure if the lien attached to the property before it became a homestead and was therefore "an inherent characteristic of the property acquired." *Inwood*, 736 S.W.2d at 636. Because a lien created by section 372.018 "is effective from the date of the ordinance or order levying the assessment," TEX. LOC. GOV'T CODE ANN. § 372.018(b) (Vernon Supp. 2004), the date of the ordinance or order must predate the homestead's creation. The amounts to be collected must fall within the lien's scope. *See Brooks*, 2004 WL 1439643, *11; Tex. Att'y Gen. LO-97-019, at 4. Whether an assessment on a particular homestead may be enforced by foreclosure will ultimately depend upon the facts of the particular case and would be beyond the purview of an attorney general opinion. *See* Tex. Att'y Gen. LO-97-019, at 4 (determinations whether "a lien for those costs (i) attached to the property prior to the homestead right and (ii) is the result of a restriction that runs with the land . . . will ultimately depend upon the facts of the particular case and are beyond the purview of an attorney general opinion"); *see also* Tex. Att'y Gen. Op. Nos. GA-0128 (2003) at 5 (question requiring resolution of

particular facts is "not one in which this office ordinarily engages in the opinion process"); GA-0106 (2003) at 7 ("This office cannot find facts or resolve fact questions in an attorney general opinion.").

Attorney General Opinion JC-0386 did not address foreclosure of a homestead to enforce a contractual or statutory lien for assessments predating a homestead and is not inconsistent with this opinion. Moreover, nothing in this opinion affects the conclusion in Attorney General Opinion JC-0386 that chapter 372 assessments are not taxes for purposes of article XVI, section 50(a)(2) of the Texas Constitution.

# S U M M A R Y

A public improvement district assessment may be enforced by foreclosure of a homestead provided that the statutory lien created by section 372.018(b) of the Local Government Code predates the date the property became a homestead and the amounts to be collected fall within the lien's scope.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee