Opinion issued June 19, 2008

 













In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00573-CV






JAMES L. SUPKIS, Appellant


V.


MADISON PLACE HOMEOWNERS' ASSOCIATION, INC., Appellee






On Appeal from the 133rd District Court

Harris County, Texas

Trial Court Cause No. 2006-57844






MEMORANDUM OPINION


 In this appeal, we consider whether a homeowners' association's right to levy
maintenance-fee assessments and to foreclose on a real property lien based upon a
members' failure to pay such assessments violates the rule against perpetuities. We
affirm the judgment of the trial court.

I. BACKGROUND

A. Appellant Purchases a Townhome Subject to Covenants and Restrictions

 Appellant, James L. Supkis, purchased a lot and home in Madison Place
Townhomes in 1985. His deed contained the following provision:

 This conveyance is made subject to all and singular the restrictions,
easements, conditions and covenants, if any, applicable to and
enforceable against [the property] as shown by the records of said
county.


 In 1979, six years before Supkis bought his townhome, a "Declaration of
Covenant, Conditions and Restrictions of Madision Place Townhomes" ["the
Declaration"] had been filed in the Harris County real property records. The enabling
paragraph of the Declaration provides as follows:

 NOW THEREFORE, Declarant hereby declares that all of said real
property described above shall be held, sold and conveyed subject to the
easements, restrictions, covenants, and conditions set forth herein, all of
which are for the purpose of enhancing and protecting the value,
desirability, and attractiveness of said real property. These easements,
covenants, restrictions and conditions shall run with said real property
and be binding upon all parties having or acquiring any right, title or
interest in the above described real property any part thereof, their heirs,
successors and assigns, and shall inure to the benefit of each owner
thereof.


The Declaration also contains the following paragraphs in Article IV, which is

entitled "Covenant for Maintenance Assessments."

 Section 1. Creation of the Lien and Personal Obligations of
Assessments. The Declarant, for each lot owned within the property,
hereby covenants, and each Owner of any lot by acceptance of a deed
therefor, whether or not it shall be expressed in any such deed or other
conveyance, is deemed to covenant and agrees to pay to the Association:
(1) annual assessments or charges, and (2) special assessments for
capital improvements; and other matters set forth herein, such
assessments to be fixed, established, and collected as hereinafter
provided. The annual and special assessments, together with such
interest thereon and costs of collection thereof, as hereinafter provided,
shall be a charge on and shall be secured by a continuing lien upon the
Lot and Townhouse against which each such assessment is made. Each
such assessment, together with any interest, costs, and reasonable
attorney's fees, shall also be the personal obligation of the person who
was the owner of such Lot and Townhouse at the time when the
assessment fell due.


 Section 8. Effect of Nonpayment of Assessments: Remedies of the
Association. Any assessments which are not paid when due shall be
delinquent. If the assessment is not paid within thirty (30) days after the
due date . . . the Association may bring an action at law against the
Owner personally obligated to pay the same, or foreclose the lien against
the Lot and Townhouse. . . . . Each such Owner, by his acceptance of a
deed to a Lot, hereby expressly vests in the Association or its agents, the
right and power to bring all actions against such Owner personally for
the collection of such charges as a debt and to enforce the aforesaid lien
by all methods available for the enforcement of such lien, including
foreclosure by an action brought in the name of the Association in a like
manner as a mortgage or deed of trust lien foreclosure on real property
. . .


Finally, Article X of the Declarations provides in part:


 The covenants and restrictions of this Declaration shall run with and
bind the Property and each Lot, and shall inure to the benefit of and be
enforceable by the Association, or the Owner of any Lot subject to this
Declaration, their respective legal representative, heirs, successors, and
assigns for a term of twenty(20) years from the date this Declaration is
recorded in the Official Public Records of Real Property of Harris
County, Texas, after which time said covenants shall be automatically
extended for successive periods of ten (10) years. (Emphasis added).


Article X of the Declaration also provides a mechanism through which the members
of the Homeowners' Association can amend the Declaration.

B. The Homeowners' Association Sues Appellant for Unpaid Assessments

 The Homeowners' Association filed suit against Supkis seeking to recover
delinquent assessments, interest, attorney's fees, costs, and the establishment and
foreclosure of its lien against Supkis's property. Supkis answered with a general
denial and a special denial alleging that the Homeowner's Association had no
capacity to bring the suit.

 The Homeowner's Association and Supkis then brought cross-motions for
summary judgment. The Homeowners' motion was based on the provisions of the
Declaration and included proof that Supkis had not paid the required assessments. 
In his cross-motion for summary judgment, Supkis alleged (1) that the Homeowners'
Association had no standing to sue, and (2) that the Declaration was invalid and
unenforceable. Both of Supkis's contentions were based on his argument that the
Declaration violates the rule against perpetuities.

C. The Trial Court's Judgment

 The trial court granted the Homeowners' Association's motion and denied
Supkis's motion. In its judgment, the trial court awarded the Homeowners'
Association $10,789.12 for past-due assessments, attorney's fees, and ordered
foreclosure of Supkis's townhome. This appeal followed.

II. PROPRIETY OF SUMMARY JUDGMENT


 In two issues on appeal, Supkis contends the trial court erred in granting the
Homeowners' Association's motion for summary judgment and in denying his motion
for summary judgment. Specifically, he contends that (1) the Homeowners'
Association did not prove its legal capacity to sue, and (2) he proved, as a matter of
law, that the Declaration was unenforceable. Both of Supkis's points of error rest on
his assertion that the Declaration, from which the Homeowner's Association derives
its authority to both impose and sue to collect assessments, is invalid because it
violates the rule against perpetuities.

A. Standard of Review

 Because summary judgment is a question of law, we review a trial court's
summary judgment decision de novo. Bendigo v. City of Houston, 178 S.W.3d 112,
113 (Tex. App.--Houston [1st Dist.] 2005, no pet.). The standard of review for a
traditional summary judgment motion is threefold: (1) the movant must show that
there is no genuine issue of material fact, and that he is entitled to judgment as a
matter of law; (2) in deciding whether there is a disputed material fact issue
precluding summary judgment, the court must take evidence favorable to the
nonmovant as true; and (3) the court must indulge every reasonable inference in favor
of the nonmovant and resolve any doubts in the nonmovant's favor. Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985); see Tex. R. Civ. P. 166a(c).
A defendant seeking summary judgment must as a matter of law negate at least one
element of each of the plaintiff's theories of recovery or plead and prove each element
of an affirmative defense. Mo. Pac. R.R. v. Lely Dev. Corp., 86 S.W.3d 787, 790
(Tex. App.--Austin 2002, pet. dism'd). If a trial court's order granting summary
judgment does not specify the basis for the court's ruling, as here, the summary
judgment will be affirmed if any of the theories advanced by the movant is
meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989). When, as here, 
both sides move for summary judgment, and the trial court grants one motion but
denies the other, we review all of the evidence, determine all questions presented, and
render the judgment the trial court should have rendered. Comm'rs Court of Titus
County v. Agan, 940 S.W.2d 77, 81 (Tex. 1997).

B. Rule Against Perpetuities

 The Texas Constitution states that "[p]erpetuities . . . are contrary to the genius
of a free government, and shall never be allowed." Tex. Const. art. I, § 26. Texas
courts have enforced this provision by applying the common-law rule against
perpetuities. Mattern v. Herzog, 367 S.W.2d 312, 314 (Tex. 1963). Under the rule,
an interest is not valid unless it must vest, if at all, within 21 years after the death of
some life or lives in being at the time of the conveyance. Peveto v. Starkey, 645
S.W.2d 770, 772 (Tex. 1982).

 Supkis argues that the Declaration is "constitutionally void" because it
"attempts to create real property interests, including unknown and contingent
assessments, and liens, that may continue indefinitely." Specifically, Supkis contends
that the Declaration violates the rule against perpetuities because, after its initial 20-year term, it can be "automatically extended" in 10-year increments. We disagree.

 In State v. Reece, 374 S.W.2d 686 (Tex. Civ. App.--Houston 1964, no writ),
the purchaser of the property bought land subject to a restriction that it be used only
for residential purposes. Id. at 688. The restriction instrument provided that the
restriction was to "remain in full force and effect perpetually" unless, after the
expiration of 15 years, 75% of the lot owners vote to change the restrictions. Id. The
purchaser of the property argued that the restriction violated the rule against
perpetuties. Id. This court held that, "the restrictions, being covenants running with
the land, although described as perpetual, are not in violation of the rule against
perpetuities which, in the final analysis, is merely a rule against the too remote
vesting of the title to real property." Id. We noted that, as a covenant running with
the land, the interests created by the restrictions passed with the conveyance of the
title to the property and vested immediately as the title to the property vested. Id.
(citing Butler v. Southwest Dairy Products Co., 146 S.W.2d 1036 (Tex. Civ.
App.--Galveston 1941, writ dism'd)). As such, the rule against perpetuities was not
implicated.

 In Cornett v. City of Houston, 404 S.W.2d 602, 604 (Tex. Civ. App.--Houston
1966, no writ), the purchaser of the property wanted to open a liquor store, but the
restrictions on file in the county deed records limited use of the property to residential
purposes only. The document containing the restriction provided that it was valid for
a term of 25 years to be automatically extended for successive 15 year periods. Id.
at 605. This Court, citing State v. Reece, held that "[t]he covenants and restrictions
do not violate the rule against perpetuitites because that rule merely relates to the
remote vesting of an estate." Id.

 From Reece and Cornett, we conclude that a restriction on property that runs
with the land does not implicate the rule of perpetuities if it does not remotely vest
a property interest. Thus, the issue we decide next is whether the covenant to pay fee
assessments, found in the Declaration, is a covenant running with the land that
implicates remote vesting of an interest in the property.

 A covenant runs with the land when it touches and concerns the land; relates
to a thing in existence or specifically binds the parties and their assigns; is intended
by the original parties to run with the land; and the successor to the burden has notice. 
Inwood N. Homeowners' Ass'n v Harris, 736 S.W.2d 632, 635 (Tex. 1987); Westland
Oil Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 910-11 (Tex. 1982).

 In Inwood North Homeowners' Association, a declaration of covenants and
restrictions for the subdivision, which was on file in the county's real property
records, provided that any person receiving a deed for a lot in the subdivision was to
pay an annual assessment and any special assessments for capital improvements. 736
S.W.2d at 633. The court held that the covenant to pay maintenance assessments for
the purpose of repairing and improving the common areas and recreational facilities
of the subdivision met all of the requirements for a covenant running with the land 
because (1) it "touched and concerned" the land, (2) the declaration of covenants
evidenced the intent of the original parties that the covenant run with the land, (3) the
covenant specifically bound the parties and their successors and assigns, and (4)
because the property was conveyed in a succession of fee simple estates, the
requirement of privity was met. Id. at 635.

 The same is true of the covenant to pay maintenance fees and assessments in
this case. The purpose of the fee assessment in this case is to "be used exclusively
for the purpose of promoting the recreation, health, safety, and welfare of the Owners
and in particular for improvement and maintenance of the property, the Common
Areas, and services and facilities relating to the use and enjoyment and of the
Townhouses and other improvements new or hereafter situated thereon . . . ." As
such, the fee-assessment provision "touches and concerns the land." Id. at 635. Here,
the declaration also provides, in both the enabling paragragh and in Article X, that the
covenants and restrictions shall run with the real property and be binding on all
parties acquiring the property and their heirs, successors, and assigns. As such, the
fee-assessment provision meets the requirements that it be intended to run with the
land and be binding on the parties and their assigns. Id. Finally, the deed signed by 
Supkis referenced the declaration; he was thus on constructive notice of its restrictive
covenants. See id. As such, the requirement that he have notice of the burden has
been met. Id.

 Therefore, under the reasoning of Inwood North Homeowners' Association, we
conclude that the requirement that homeowners in Madison Place pay maintenance
fee assessments is a covenant running with the land. Moreover, the assessment
burden vests upon transfer of the property and thus does not implicate the rule against
perpetuities because it does not involve the remote vesting of a real property interest. 
See Cornett, 404 S.W.2d at 605; Reece, 374 S.W.2d at 688. 

 Our holding today is consistent with the holdings of other jurisdictions that
covenants to pay fee assessments do not violate the rule against perpetuities because
they burden a present, not a future, interest in property. See In re County Treasurer
& Ex Officio County Collector, 869 N.E.2d 1065, 1086-87 (Ill. App. Ct. 2007)
(holding that declaration created present interest in collecting assessments on all lots
in development and that covenant of assessments is present interest and does not
violate rule against perpetuities); Kell v. Bella Vista Prop. Owners Ass'n, 528 S.W.2d
651, 653 (Ark. 1975) (holding that assessment covenant, which provided for initial
term of 26 years followed by successive 10-year periods, not an illegal perpetuity
because nothing prevents property from vesting); Lowry v. Norris Lake Shores Dev.
Corp., 203 S.E.2d 171, 172-73 (Ga. 1974) (holding that annual fee assessment for
beach privileges is covenant running with land and does not violate rule against
perpetuities).

C. Lien is Enforcement Mechanism for Covenant Running with the Land

 Having decided that the fee-assessment provision of the Declaration is a
covenant running with the land and does not violate the rule against perpetuities, we
consider whether the lien to enforce the fee assessment presents a violation of the
rule. In Inwood North Homeowner's Association, after holding that a fee assessment
was a covenant running with the land, this Court further held that the restrictions
contained "valid contractual liens which run with the land," and that the homeowners
took the property subject to the homeowners' associations's right to foreclose for
delinquent assessments. 736 S.W.2d at 635-36. This Court held that this right to
foreclose was superior to the landowner's homestead rights because it pre-existed the
landowner's purchase of the property. Id.

 The same is true in this case. The Homeowners' Associations's right to
foreclose its lien for non-payment of fee assessments is specifically provided for in
the Declaration. According to Inwood North Homeowner's Association, this lien
right also runs with the land, id. at 635, and Supkis took title to his property subject
to such right. The foreclosure right is the enforcement mechanism for the
homeowner's assessments, burdens which are immediately vested upon transfer of
the property. Thus, the right of foreclosure cannot result in a remote or contingent
vesting interest, and as the provision which it enforces does not violate the rule
against perpetuities, neither does it.

III. CONCLUSION

 The fees assessment provision is a covenant running with the land that does not
remotely vest any property interest and thus, does not violate the rule against
perpetuities. Accordingly, we overrule Supkis's first and second issues. We affirm
the judgment of the trial court.


 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.