Carol C. EVANS, Plaintiff-Appellant,

v.

CENTRALFED MORTGAGE CO.,
Defendant-Appellee.

No. 86–1820
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 29, 1987.

Elizabeth K. Julian, Michael M. Daniel, Julian & Daniel, Dallas, Tex., for plaintiff-appellant.

Marigny A. Lanier, Riddle & Brown, Dallas, Tex., for defendant-appellee.

Before CLARK, Chief Judge, GARWOOD, and HILL, Circuit Judges.

PER CURIAM:

Plaintiff Carol C. Evans appeals from the district court's grant of summary judgment to the defendant, Centralfed Mortgage Company, dismissing this cause of action under the Equal Credit Opportunity Act, 15 U.S.C. § 1691. Evans, a married woman, contends that Centralfed discriminated against her on the basis of sex and marital status, because Centralfed conditioned a loan for the purchase of non-homestead residential property upon including her husband as a grantee in the warranty deed and his signature on the deed of trust. We affirm.

In May of 1984, Evans and her daughter applied to Centralfed for a residential real estate loan. Evans was advised that the loan application would be evaluated on her individual credit rating and that of her daughter, independent of her husband. Centralfed also advised Evans that the company's policy required the name of the spouse of any married borrower to appear

in the warranty deed reflecting ownership of the property and for the spouse to sign the deed of trust conveying a security interest in the property.

Evans immediately made known her desire to purchase the property with her daughter in her own name and not to have her husband involved in the transaction. Centralfed processed and underwrote the loan application by examining Evans' credit history and ability to repay the loan without regard to her husband's creditworthiness. Centralfed acknowledged that Evans' husband would not be a borrower in the transaction, would not be required to sign the note, and would not be personally obligated to repay the loan obligation. The loan application was given conditional approval on this basis. Evans nevertheless withdrew her application because Centralfed continued to require that her husband's name appear on the warranty deed and that he sign the deed of trust. Centralfed applies this policy to all married borrowers in the State of Texas.

Evans brought this action pursuant to the Equal Credit Opportunity Act, 15 U.S.C. § 1691, alleging that Centralfed had discriminated against her on the basis of sex and marital status. Both parties moved for summary judgment, and the district court granted the defendant's motion, finding that it was reasonable as a matter of law for Centralfed to require the paper participation of Evans' husband in the title transaction.

Evans appeals the district court's judgment, asserting a violation of § 1691 for discrimination on the basis of sex or marital status. We initially note that Evans really makes no claim that she was discriminated against on the basis of sex. Her entire argument is predicated on Centralfed's different treatment of a married person by requiring the non-borrowing spouse's participation. Indeed, she concedes on brief that Centralfed's policy applies to all married borrowers, without regard to sex. The only distinction made by Centralfed is between a married borrower and an unmarried borrower.

That Evans was treated different from an unmarried borrower does not answer the question whether this discrimination is actionable under the Equal Credit Opportunity Act. Section 1691 provides:

**Activities constituting discrimination**

(a) It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—

(1) on the basis of ... sex or marital status....

Section 1691d further provides:

**Requests for signature of husband and wife for creation of valid lien, etc.**

(a) A request for the signature of both parties to a marriage for the purpose of creating a valid lien, passing clear title, waiving inchoate rights to property, or assigning earnings, shall not constitute discrimination under this subchapter: *Provided, however,* That this provision shall not be construed to permit a creditor to take sex or marital status into account in connection with the evaluation of creditworthiness of any applicant.

■ We are not persuaded that the discrimination of which Evans complains is the sort of discrimination which Congress sought to prohibit. Here, there is no discrimination "with respect to any aspect of a credit transaction" within the meaning of § 1691. While Centralfed felt that perfection of the security required Evans' spouse's participation, it did not require that he play any part in the credit portion of the transaction. "Credit" is defined in § 1691a(d) as "the right granted by a creditor to a debtor ... to purchase property ... and defer payment therefor." Evans' husband was not required to sign the promissory note or assume any personal obligation for his wife's debt. His creditworthiness was not included in their consideration of whether the loan could be repaid. The title requirements imposed by Centralfed were solely to obviate concerns that community property claims might be raised in the future. They did not control Evans' individual right to purchase the property and defer the payment.

Furthermore, the proviso language from § 1691d(a), quoted above, only excepts an "evaluation of creditworthiness" which is made on the basis of marital status. Centralfed requested the appearance and signature of Evans' husband for the purpose of waiving inchoate rights, creating a valid, perfected lien, and passing title that would be free of the possibility of legal complications. This request had absolutely no connection to Evans' creditworthiness or that of her daughter. Her loan application had been approved on the basis of her credit history, independent of that of her husband. This requirement presents no actionable discrimination prohibited by the Equal Credit Opportunity Act.

■ On this appeal, both parties have taken the issue a step further, focusing on the district court's conclusion that it was reasonable as a matter of law for Centralfed to require a non-borrowing spouse's signature on the deed of trust and name on the warranty deed. This "reasonableness" requirement arises from regulations promulgated by the Federal Reserve Board pursuant to the Act which provide:

(d) Signature of spouse or other person. (1) Except as provided in this subsection, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, *on any credit instrument* if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested.

* * * * * *

(4) If an applicant requests secured credit, a creditor may require the signature of the applicant's spouse or other person on any instrument necessary, or *reasonably believed by the creditor to be necessary, under applicable State law to make the property being offered as security available to satisfy the debt in the event of default, for example, any instrument to create a valid lien, pass clear title, waive inchoate rights, or assign earnings.*

12 C.F.R. § 202.7.[1]

The parties debate the question of whether Centralfed "reasonably believed" Evans' husband's signature on the deed of trust and name on the warranty deed was necessary to create a valid lien under applicable state law. At the outset of our consideration of the question of reasonableness, we would repeat that Centralfed's signature-of-spouse requirement is not prohibited discrimination. Centralfed did not require the non-borrowing spouse's signature "on any credit instrument" under § 202.7(d). As discussed above in the context of the plain meaning of the statute itself, it appears that the intent of this regulation is to remedy or prevent instances where a credit decision is based on an impermissible ground, such as marital status. Evans' husband was not required to sign a "credit instrument" such as a promissory note or to assume a personal obligation for the debt.

Although the question of reasonableness appears to be collateral to the central inquiry under the Act, the regulations expressly direct us to consider whether the creditor reasonably believed it was necessary under state law to secure the spouse's participation in perfecting its security. Evans argues that Centralfed could not reasonably have believed that its policy was necessary under Texas law because a non-borrowing spouse's signature is not required to convey community property which is under the other spouse's sole management, control, and disposition. *See* Tex.Fam.Code Ann. § 5.24.[2] Evans fur-

---

1. Emphasis added.

2. This section provides:

(a) During marriage, property is presumed to be subject to the sole management, control, and disposition of a spouse if it is held in his or her name, as shown by muniment, contract, deposit of funds, or other evidence of ownership, or if it is in his or her possession and is not subject to such evidence of ownership.

(b) A third person dealing with a spouse is entitled to rely (as against the other spouse or anyone claiming from that spouse) on that spouse's authority to deal with the property if:

(1) the property is presumed to be subject to the sole management, control, and disposition of the spouse; and

(2) the person dealing with the spouse:

ther cites cases that have recognized a spouse's presumptive authority to encumber and dispose of property, including any non-borrowing spouse's interest, if title is held in the one spouse's name. *See, e.g., Cummings v. Johnson,* 616 F.2d 1069, 1074–75 (9th Cir.1979); *Thomas v. Rhodes,* 701 S.W.2d 943, 945 (Tex.Ct.App.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987).

We need not decide whether Evans' view of Texas law is correct. Section 5.24 appears to entitle her to acquire community property in her own name and to encumber or convey that property to third persons without joinder of her husband. It allows third parties to presume she had the authority to do so. Evans erroneously assumes, however, that from this simple and straightforward proposition, one can determine that Centralfed could not reasonably have believed that its policy was necessary to insure any one of the enumerated valid purposes under the regulations. The possible complications of Texas community property do not leave this proposition such a simple one. The fact that Evans looks to litigated cases concerning the very provisions asserted by her to support her current interpretation of Texas law bolsters Centralfed's reasonable belief in its policy.

Centralfed asserts that it needed for Evans' husband to appear in the chain of title to acknowledge that he recognized the property interest was subject to its lien. It wished positive record assurance that its security for the note not only was free from question by third parties, but also that its property interest would be available in the event of default, and that it would not be faced with the possibility of future legal proceedings by the husband if it attempted to foreclose. As a matter of law, these concerns constitute a commer-cially reasonable belief wholly apart from "creditworthiness." [3]

Specific property law issues are presented here only in their reasonable potential for future claims, so we need not decide the precise questions as matters of Texas community property law. It is sufficient that no genuine issue of fact existed as to the legal reasonableness of Centralfed's belief that a non-borrowing spouse's name and signature should be required on the warranty deed and deed of trust.

In *McKenzie v. U.S. Home Corp.,* 704 F.2d 778 (5th Cir.1983), this court was faced with a similar Equal Credit Opportunity Act challenge to a creditor's requirement of a joint signature in a situation where the borrowing spouse wanted the property in her own name at a time when she was separated from her husband and divorce proceedings were pending. We stated:

> U.S. Home Mortgage's reason for requiring either a joint signature or a divorce was to insure a valid lien. In Texas, a community property state, this concern about a valid lien was reasonable. Thus, § 1691d(a) insulates the defendants from liability, as the district court correctly held.

*Id.* at 779. We rely on that decision despite Evans' notation that in *McKenzie* the property was to be purchased as a home by the borrowing spouse. *McKenzie* does not turn on the fact that the property the borrowing spouse was purchasing was to be used as a home. Rather, this court relied solely on the fact that Texas is a community property state in declaring the lender's policy reasonable.

What is significant is that Centralfed reasonably believed that its policy was necessary to perfect its security interest. We

---

(A) is not a party to a fraud upon the other spouse or another person; and

(B) does not have actual or constructive notice of the spouse's lack of authority.

**3.** At the time Evans applied to Centralfed for the loan, the Federal National Mortgage Association (FNMA) required as part of its underwriting criteria that a non-borrowing spouse execute the deed of trust in Texas because it is a community property state. The FNMA provides a major secondary market for the sale of mortgages by lenders such as Centralfed. Centralfed had a commercially reasonable belief that it needed the non-borrowing spouse's signature in this case to render Evans' mortgage marketable. Although the FNMA has since changed its underwriting standards, this requirement was in force at the time Evans applied to Centralfed for the loan.

agree with the district court that, as a matter of law, Centralfed's concerns were reasonable under applicable Texas law.

The district court's judgment granting defendant Centralfed's motion for summary judgment is

AFFIRMED.