STEWART TITLE GUARANTY
COMPANY, Appellant,

v.

CITY NATIONAL BANK OF MINERAL
WELLS, Appellee.

No. 11–89–158–CV.

Court of Appeals of Texas,
Eastland.

Sept. 20, 1990.

Rehearing Overruled Oct. 25, 1990.

Robert F. Watson, Mineral Wells,
Charles E. Fitch, S. Bradley Todes, De
Lange, Hudspeth & Pitman, Houston, for
appellant.

Perry J. Cockerell, Sloan B. Blair, Canty
& Hanger, Fort Worth, for appellee.

OPINION

DICKENSON, Justice.

After City National Bank of Mineral
Wells foreclosed its deed of trust, the debt-
ors [1] told the Bank that there had been a
mistake in the property description and
that their home was not located on the
property covered by the Bank's lien. The
debtors refused to execute correction in-
struments because of their contention the
Bank had bid the property in at a fraction
of its value. When the title insurance com-
pany [2] took the position that it did not
insure the one-acre tract upon which the
house was built, the Bank filed suit for
declaratory judgment and damages.

After a nonjury trial the trial court en-
tered judgment for the Bank against the
title insurance company: (a) for the face
amount of the title insurance policy ($120,-
000.00) plus prejudgment interest; (b) at-
torney's fees and expenses of $21,522.00;
(c) additional attorney's fees in the event of
appeal; (d) exemplary damages of $50,-
000.00 for the breach of its duty of good
faith and fair dealing; (e) declaratory relief

1. Glenn R. Littlepage and his wife, Barbara Lin-
da Littlepage, are the debtors. They executed
mechanic's liens and deeds of trust in connec-
tion with the building of a four-bedroom home
containing 4,088 square feet which was to be
built on a one-acre tract of land which was part
of a 20.29–acre tract which they had purchased
from Glenn's brother. The house was actually
built on a different one-acre tract which was
also part of the 20.29–acre tract. The debtors
claim this lot and the house as their homestead,
and they filed bankruptcy proceedings while
this case was pending on appeal.

2. Stewart Title Guaranty Company was named
as defendant in the District Court of Palo Pinto
County (the case on appeal) when it refused to
become involved in a case filed by the Bank
against the debtors in the District Court of
Young County. The Bank sought to reform the
instruments creating its lien so that they would
describe the one-acre tract upon which the
house had been built.

ordering the title company to prosecute the lawsuit which the Bank had filed in Young County with detailed instructions as to how the lawsuit should be handled; (f) subrogating the title company to the Bank's lien position if and when the $120,000.00 was paid to the Bank by the title company; and (g) providing for post-judgment interest at the rate of 10 percent per year. The title insurance company appeals. We reverse and render.

### Findings of Fact and Conclusions of Law

The trial court made extensive findings of fact and conclusions of law pursuant to TEX.R.CIV.P. 296.

### Points of Error

Appellant briefed 16 points of error. Appellant challenges the sufficiency of the evidence to support the trial court's findings and complains of other matters; however, the first point is dispositive of the appeal. Consequently, the other points need not be discussed. Appellant argues in the first point that the trial court erred in rendering judgment that the Bank recover monetary damages and declaratory relief because:

C. The evidence conclusively shows that the subject matter of the Young County suit involved a certain tract of real property other than that certain tract which was insured by the title policy;

D. The evidence conclusively shows that neither the Bank, nor anyone acting on its behalf, sought, requested, or applied for title insurance on the real property where the house was actually built;

E. The judgment of the trial court does not reform or purport to reform the title policy so that it would describe the real property where the house was built;

F. The evidence conclusively shows that Stewart's title insurance agent was requested to insure the tract described in the title policy it issued and there is no evidence that Stewart intended to insure any other tract; [and]

G. There is no coverage under a mortgagee's title policy for the "wrong" property description being contained in the insured lien because of mutual mistake between the insured and its borrower, or for fraud practiced on the insured by the borrower.

We sustain this point of error. The record is clear that the description used in the instruments and in the title insurance policy was furnished by Glenn R. Littlepage. He and his wife owned a tract containing 20.29 acres of land. They had a surveyor prepare a survey of two adjacent one-acre tracts inside their land. The description of one of the tracts (which will be called "Black Acre" in this opinion) was used in the mechanic's lien agreements and in the deeds of trust. The home was built on the other tract (which will be called "White Acre" in this opinion). The record is not developed as to the reason the house was built on White Acre when the lien was secured on Black Acre. We express no opinion as to whether it was the result of mutual mistake or fraud. In either event, the result as between two innocent parties, the Bank and the title insurance company, is the same.

### Factual Background of Controversy

1. *The surveyor:* Melvin Kenneth Mobley testified that he is a registered surveyor who works for himself as Mobley Engineering Company. He also said that he and his wife are in a family partnership with his sister and her husband, Sidney T. Hearne. They operate three businesses: Mobley Engineering Company, which he runs; Guaranty Abstract Company, which his brother-in-law runs; and Mobley Office Supply, which his sister runs. Mobley testified that as a general rule he does not have anything to do with the title company, and his brother-in-law does not have anything to do with the survey business. Mobley also said that he did not have anything to do with the title company regarding this transaction.

Mobley prepared a survey for Glenn Littlepage in July of 1984 which divided a 46–acre tract into three tracts and then cut two one-acre tracts out of a 20.29–acre tract. Mobley said that he had not seen

the exhibit which shows only one of the one-acre tracts (Black Acre) until the time his deposition was taken. Mobley said the survey which he prepared showed both of the one-acre tracts. He does not have any idea who prepared the plat showing only one of the two one-acre tracts. The survey which he prepared also shows an easement from the two one-acre tracts to the outside border of the 46–acre tract.

Mobley testified that he prepared a second survey in 1988 at the request of Glenn Littlepage to show the location of the improvements. This survey shows that the house is located on White Acre and that Black Acre is vacant. Mobley said that he made the 1984 survey before the house was started.

*2. The abstracter:* Sidney T. Hearne testified that he is the manager of Guaranty Abstract Company in Graham which is a licensed title insurance agent for Stewart Title Guaranty Company. Hearne said that his company does not prepare documents and that it did not close the transaction between Glenn Littlepage and RepublicBank. They had an order for a title policy commitment, and after the title requirements were met, he issued a policy to RepublicBank which he countersigned for Stewart Title Guaranty Company. When the lien was transferred to City National Bank, he issued another title insurance policy for that bank. He was aware that a house "was supposed to have been built on a lot" and that title insurance had been purchased "to insure the validity on that particular lot." He assumed that the house was built on the site covered by the legal description in the instruments which were furnished to him by Bobby Joe Mann, the attorney who prepared the instruments. The tract described by the instruments is the tract which was insured, and City National Bank now owns that tract because of the foreclosure.

Hearne said that he became aware of the problem in March of 1988 when Glenn Littlepage and Jimmy Seay, the President of City National Bank, came to his office. At that time Littlepage said he wanted "to get straight with the Lord" and that he would sign anything needed to get this situation straight. Hearne called the District Manager of Stewart Title Guaranty Company to find out what was needed, and then he wrote a letter to Glenn Littlepage telling him what was needed to correct the problem. Mr. and Mrs. Littlepage never did sign the necessary paperwork to clear up the problem.

*3. Debtors' Attorney:* Bobby Joe Mann, an attorney from Mineral Wells, testified that he prepared the two mechanic's lien contracts for Glenn Littlepage and that he also prepared the transfer of lien from RepublicBank to City National Bank. He said there "wasn't really a closing. There was a transaction, but there was no formal closing." Mann said that he prepared the documents at the request of Glenn Littlepage, and he was Glenn Littlepage's lawyer in connection with the transaction. He understood that they were putting the lien on the one-acre tract where the house was to be built. Mann was not aware of the fact that the house was being built on the wrong tract. Mann got the legal description of the property from Glenn Littlepage. Mann did not talk to the surveyor, but he used the plat which was brought to him by Littlepage. That plat only showed one of the two one-acre tracts, and Glenn Littlepage said this was the tract where he was going to build the house. The plat showed a right-of-way easement to the property. Mann said the title commitment required a right-of-way, but he has never seen the title policy.

Mann testified that Young County (where the land is located) is different from Palo Pinto County (where he practices) in that in Palo Pinto County the attorney actually researches the title and writes an attorney's report to the title company telling them what curative work needs to be done. In Young County they (the title company employees) do the work themselves; they tell you what they want you to draft; and then they issue the policy. Glenn Littlepage asked Mann to prepare the documents, and Mann sent them to Guaranty Abstract Company in Graham for them to review before they issued the policy. Mann said that he was not asked to

examine the title. He simply prepared documents from the information given him by Glenn Littlepage.

4. *Original Bank's Loan Officer:* Nick Garrettson testified that he was a vice president of RepublicBank when the interim construction loan was made to Glenn Littlepage. They were loaning money on a tract of land where a house was to be constructed. He visited the property while the house was being built. It was in the middle of a 20–acre tract of land "in the general location of where the survey showed it was supposed to be."

5. *Plaintiff Bank's President:* Jimmy Seay testified that he is President of City National Bank in Mineral Wells. His bank purchased the loan after the house was virtually completed. Seay went out and looked at it. It was a very nice home on a one-acre tract inside 20 acres. He was only aware of one of the two one-acre tracts, and the survey which he saw only showed one of them. The Bank extended the loan two or three times. The Bank finally foreclosed on the property in January of 1988.

Seay and another man from the Bank went out to the property in the latter part of February, and Glenn Littlepage was there with his wife. That was when Mr. Littlepage said: "I think we've got a problem with the title, but I don't know what all it is, but I think there has been a mistake made." Littlepage then told Seay that Littlepage was not sure if the house was on the property that the Bank had foreclosed. Littlepage agreed to have the property surveyed, and he and his wife talked like they were willing to do whatever was needed to correct the problem. The survey showed the house was not built on the one-acre tract covered by the Bank's lien. Hearne at Guaranty Abstract Company wrote Littlepage a letter "laying out the method" by which the problem could be corrected. Seay said: "And of course, Mr. Littlepage never did do anything about that."

When Seay learned that Littlepage had listed the property for sale, the Bank hired a lawyer to file the suit for reformation and also to file lis pendens notice to put any potential purchasers on notice of the Bank's claim. The Bank's lawyer then wrote a series of letters to Stewart Title Guaranty Company asking it to cure the title. The Bank and its lawyer never received any formal response to those letters. The Bank has been damaged by the loss of interest on the loan of over $36 per day plus attorney's fees and expenses. The principal balance due on the loan is $117,-837.96, and the interest to date (12–16–88) is $20,631.29.

On cross-examination Seay agreed that the Bank foreclosed upon the property and currently owns the tract of land where everyone had assumed that the house was built. Seay conceded that Stewart Title "guaranteed you [the Bank] title to a piece of property, and as a result of foreclosure you [the Bank] currently have title to that piece of property."

6. *Plaintiff Bank's Attorney:* Perry Cockerell testified that he is a licensed attorney who was retained by City National Bank, and he testified as to his attorney's fees.

### *Relevant Provisions of the Policy*

The title insurance policy which was issued by Stewart Title Guaranty Company to the City National Bank, Mineral Wells, Texas, on July 2, 1985, provides in relevant part:

> STEWART TITLE GUARANTY COMPANY ... will pay to the Insured ... all loss or damage not exceeding [$120,-000.00] ... which the Insured ... may sustain or suffer by reason of the failure of, defects in, encumbrances upon, or liens or charges against the title of the mortgagors or grantors to the estate or interest *in the land described in the mortgage or trust deed identified in Schedule A [Black Acre].*
>
> [T]he Company insures that at the date of filing said mortgage or trust deed for record, *the title to the estate or interest in the land described therein was as shown in Schedule A [Black · Acre].* (Emphasis added)

## Applicable Law

 Since there was no timely pleading of any affirmative defenses under TEX.R. CIV.P. 94, we are not concerned with any policy provisions which would constitute an exception to liability under the policy; however, the insuring agreement is not an exception. Consequently, the Bank must show that its lien was on the property which was insured by the title insurance policy. See and compare *Employers Casualty Company v. Block*, 744 S.W.2d 940 at 944 (Tex.1988), where the Court held:

> An insured cannot recover under an insurance policy unless facts are pleaded and proved showing that damages are covered by his policy. As pointed out in the dissenting opinion of the court of appeals, the time of the insured's damages is a *precondition to any coverage rather than an exception to general coverage.* Thus, we hold that Employers Casualty's general denial placed the burden on the Blocks to prove that their house was damaged during the policy period. (Citations omitted) (Emphasis added)

In the case before us, the title insurance company's general denial placed the burden on the Bank to prove that its lien was on the property described in the title insurance policy.

This Court noted in *San Jacinto Title Guaranty Company v. Lemmon*, 417 S.W.2d 429 at 431 (Tex.Civ.App.—Eastland 1967, writ ref'd n.r.e.):

> The description of the land in the [title insurance] policy was for the purpose of identifying the land covered by the policy....
>
> [Appellant] undertook to guarantee to appellees "that they have good and indefeasible title" to *certain described real property.* (Emphasis added)

 The title insurance policy in the case before us does not insure the tract upon which the house was built. There has been no failure of title as to the property described in the policy of title insurance.

The Bank argues that the need for reformation should not preclude coverage under its policy, citing *Chanoux v. Title Ins. Co.*, 258 S.W.2d 866 (Tex.Civ.App.—El Paso 1953, writ ref'd n.r.e.), but we note that in that case the "title to a portion of the property guaranteed" was directly attacked.

## Ruling

The judgment of the trial court is reversed, and judgment is rendered that City National Bank of Mineral Wells take nothing by its suit against Stewart Title Guaranty Company.

Reversed and rendered.