Affirmed and Memorandum Opinion filed June 25, 2009








Affirmed and Memorandum Opinion filed June 25, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00352-CV

____________

 

RED ROCK PROPERTIES 2005, LTD., Appellant

 

V.

 

CHASE HOME FINANCE, L.L.C., Appellee

 



 

On Appeal from the 189th
District Court

Harris County, Texas

Trial Court Cause No. 2006-80850

 



 

M E M O R A N D U M   O P I N I O N

This case involves the priority of competing liens on real
property.  Appellant, Red Rock Properties 2005, Ltd. (ARed Rock@), appeals the
trial court=s denial of its motion for summary judgment and the
granting of two motions for summary judgment filed by appellee, Chase Home
Finance, L.L.C. (AChase@), that declared
Chase=s lien superior to
any lien retained by Red Rock.  In three issues, Red Rock contends that the
trial court erred based on Red Rock=s superior lien,
in (1) denying its motion for summary judgment and granting Chase=s motions and (2)
awarding attorney=s fees to Chase.  We affirm. 








BACKGROUND

The real property in dispute is a condominium that is a
part of the Holly Hall Townhomes complex, developed in a 1980s construction
project.  On March 15, 1984, a condominium declaration (Athe Declaration@) for the Holly
Hall construction project was recorded in Harris County.  The Declaration
created a homeowner=s association and authorized the
association to assess and collect monthly maintenance fees from each
condominium owner.  On July 11, 1984, Shealulu Liu purchased the condominium
subject of this suit (Athe Property@).  As part of the
purchase, Liu executed a promissory note in the amount of $72,150.00 payable to
Holland Mortgage and Investment Corporation (AHolland mortgage
note@).  The Holland
mortgage note was secured by a deed of trust on the Property.

On October 18, 2002, Liu and her husband, Richard Barbour
(collectively Athe Barbours@), refinanced the
Holland mortgage note and executed a second promissory note in the sum of
$107,200.00 payable to Community Home Loan, L.L.C.  (ARefinanced note@).  The lien securing
the Holland mortgage note was released and the Refinanced note was secured by a
deed of trust on the Property, recorded on October 23, 2002 in Harris County. 
The Refinanced note was disbursed as follows: (1) $53,595.08 to Community Home
Loan, L.L.C., (2) $49,016.62 to the Barbours, and (3) $5,166.76 for closing
costs associated with refinancing the mortgage.  Thereafter, the Refinanced
note was assigned to Chase Manhattan Corporation.  Chase Manhattan Corporation
merged with Chase, appellee in this appeal.  As the successor to Chase
Manhattan Mortgage Corporation, Chase is the owner and holder of the Refinanced
note. 

In or around November 2004, the Barbours failed to timely
pay the monthly homeowner=s dues and defaulted on their
assessments.  After posting the Property for a non-judicial foreclosure, the
association=s trustee sold the Property at a foreclosure sale to
Red Rock and Glenn Sohl on December 6, 2005, for $35,000.00.  Sohl subsequently
conveyed his interest in the Property to Red Rock.








Because the Barbours= delinquent
assessments totaled $2,510.00, the sale resulted in excess proceeds in the
amount of $32,490.00.  The association=s trustee filed an
interpleader action and interpleaded the excess proceeds with the court=s registry.  The
Barbours, Red Rock, and Sohl were parties to the interpleader suit.  On January
16, 2007, an amended judgment in the interpleader action was signed, directing
that the excess proceeds be distributed as follows: (1) $2,959.00 to the
association=s trustee, (2) $11,010.50 to the Barbours, and (3)
$18,520.50 to Red Rock. 

In November 2006, the Barbours defaulted on the Refinanced
note payable to Chase.  After the Barbours failed to cure their default, Chase
accelerated the note and scheduled the Property for a foreclosure sale.  Before
Chase could actually foreclose on the Property, Red Rock filed the instant
lawsuit against Chase seeking a declaration that it had a superior interest in
the Property.  Red Rock also brought a trespass to try title claim against
Chase.  Chase answered the lawsuit and sought its own declaratory judgment to
declare it as the superior lienholder.  Chase also counterclaimed to recoup
rental payments received by Red Rock on the Property and for unjust enrichment,
judicial foreclosure, and various property-related causes of action.








Thereafter, Red Rock filed a traditional summary judgment
motion seeking to be declared the superior lienholder.  Chase responded to Red
Rock=s summary judgment
motion and filed a traditional and no-evidence motion for summary judgment,
also requesting to be declared the superior lienholder.    The trial court
denied Red Rock=s summary judgment and granted Chase=s motion,
declaring Chase as the superior lienholder.  The trial court also awarded
$17,600.00 in attorney=s fees to Chase.  Chase filed a second
summary judgment motion on its counterclaims for assignment of rents, unjust
enrichment, and conversion.  Red Rock did not respond to this motion.  The
trial court granted Chase=s second motion with respect to the
assignment of rents and unjust enrichment counterclaims and awarded Chase an
additional $30,000.00.  Chase subsequently nonsuited its remaining
counterclaims against Red Rock.  Red Rock later filed a motion for new trial,
alleging, among other things, that the award of attorney=s fees was
improper because Chase failed to segregate its attorney=s fees.  The
motion for new trial was denied.

On appeal, Red Rock raises three issues, asserting that the
trial court erred in (1) denying its motion for summary judgment and granting
Chase=s motions and (2)
awarding attorney=s fees to Chase. 

STANDARDS OF REVIEW

Red Rock moved for summary judgment under rule 166a(c),
while Chase moved for summary judgment under both rule 166a(c) and rule
166a(i).  Traditional summary judgment under civil procedure rule 166a(c) is
proper only when a movant establishes that there is no genuine issue of
material fact and that it is entitled to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Randall=s Food Mkts., Inc.
v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); Mayer v. Willowbrook Plaza Ltd. P=ship, 278 S.W.3d 901,
908 (Tex. App.CHouston [14th Dist.] 2009, no pet.).  In deciding
whether there is a disputed issue of material fact, every doubt must be
resolved in favor of the nonmovant, and evidence favorable to the nonmovant
must be taken as true.  Fort Worth Osteopathic Hosp., Inc. v. Reese, 148
S.W.3d 94, 99 (Tex. 2004). 

Under rule 166a(i), a party may move for summary judgment
on the ground that there is no evidence of one or more essential elements of a
claim or defense on which an adverse party would have the burden of proof at
trial.  W. Invs., Inc., v. Urena, 162 S.W.3d 547, 550 (Tex. 2005);
Nguyen v. Woodley, 273 S.W.3d 891, 897 (Tex. App.CHouston [14th
Dist.] 2008, no pet.).  To defeat a no-evidence motion for summary judgment,
the nonmovant must produce summary judgment evidence raising a genuine issue of
material fact.  Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex.
2004).  A genuine issue of material fact exists if the nonmovant produces more
than a scintilla of evidence establishing the existence of the challenged
element.  Id.  








When, as here, both parties move for summary judgment and
the trial court grants one motion and denies the other, we review the summary
judgment evidence presented by both sides, determine all questions presented,
and render the judgment the trial court should have rendered.  Tex. Worker=s Comp. Comm=n v. Patient
Advocates of Tex., 136 S.W.3d 643, 648 (Tex. 2004).  We must affirm a
summary judgment if any of the summary judgment grounds are meritorious.  Id.


LIEN PRIORITY

In its first issue, Red Rock contends that the trial court
erred in denying its motion for summary judgment and granting Chase=s motions because
Red Rock is the superior lienholder.  Specifically, Red Rock contends that it
is the superior lienholder because its lien was created and recorded before
Chase=s lien.  According
to Red Rock, the assessment lien was created when the Declaration was recorded
in 1984, prior to Chase=s 2002 deed, and the association=s 2005 foreclosure
sale extinguished Chase=s lien.

Generally, different liens upon the same property have
priority according to the time of their creation.  See AMC Mortg. Servs.,
Inc. v. Watts, 260 S.W.3d 582, 585 (Tex. App.CDallas 2008, no
pet.); World Help v. Leisure Lifestyles, Inc., 977 S.W.2d 662, 668 (Tex.
App.CFort Worth 1998,
pet. denied).  This rule is known as Afirst in time is
first in right.@  Windham v. Citizens Nat=l Bank, 105 S.W.2d 348,
351 (Tex. Civ. App.CAustin 1937, writ dism=d).  However, the
parties in the instant case dispute whether the assessment lien attached in
1984 when the Declaration was recorded, or subsequently when the Barbours
defaulted on the monthly assessments in November 2004.  Relying on Inwood N.
Homeowners= Ass=n v. Harris, Red Rock
contends that the assessment lien relates back to the Declaration and attached
on the date in which the Declaration was filed.  736 S.W.2d 632 (Tex. 1987).








In Inwood, the Supreme Court of Texas determined the
priority of competing interests on the same property.  The issue of lien
priority arose in the context of a conflict between an association=s declaration that
created assessment liens and a homeowner=s homestead rights
in the same property.  Id. at 633B34.  The Inwood
court held that the association=s interest was superior to the homeowners= homestead rights
because the association=s assessment lien attached when the
original declaration was filed, before the homeowners took title, and because
the assessment lien ran with the land.  Id. at 635B36.  In
determining when the assessment lien attached, the Inwood Court looked
to the parties= agreement in the original declaration, which created
assessment liens on the date of the declaration.  See id. at 634B35.

Likewise, we look to the condominium declaration in the
instant case to determine whether the assessment lien attached when the
Declaration was filed in 1984 or when the Barbours defaulted on the monthly
assessments in November 2004.  See id.  Section 5.8 of the Declaration
provides in pertinent part:

a.       All common monthly assessments and
special assessments assessed but unpaid by a Unit Owner for its
share of Common Expenses chargeable to its respective Condominium Unit,
including interest thereon at ten percent (10%) per annum, plus any attorney=s fees incurred by the Association
in order to enforce compliance by any Owner with the terms of this Declaration,
the By-Laws, Articles of Incorporation, or Rules and Regulations of the
Association, shall constitute a lien on such Unit superior (prior) to
all other liens and encumbrances, except only for:

(1)     All taxes and special assessments levied by
governmental and taxing authorities; and 

(2)     All liens securing sums due or to become due
under any prior recorded money mortgage, vendor=s lien or deed of trust.

b.       To evidence such lien the Association may,
but shall not be required to, prepare written notice setting forth the amount
of such unpaid indebtedness, the name of the Owner of the Condominium Unit and
a description of the Condominium Unit.  Such notice shall be signed by one (1)
of the Board of Directors and may be recorded in the Office of the Clerk and
Recorder of Harris County, Texas.  Such lien for the Common Expenses shall
attach from the date of the failure of payment of the assessment . . . .








The Declaration in the instant case created assessment
liens only upon default of monthly assessments, whereas the Inwood declaration
stated that the assessment liens attached on the date of the declaration. 
Accordingly, Inwood is factually distinguishable.

Under section 5.8(a) of the Declaration, the assessment
deficiencies give rise to a lien when the monthly assessments are assessed, but
unpaid.  Section 5.8(b) further provides that an assessment lien attaches Afrom the date of
the failure of payment of the assessment.@  When construing
written instruments, a court=s primary duty is to arrive at the parties= intentions. 
J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003); Aghili
v. Banks, 63 S.W.3d 812, 816 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  Courts must not overthrow a written instrument=s clear and
explicit intentions.  See Inwood, 736 S.W.2d at 634; see also Tenneco
Inc. v. Enterprise Prods. Co., 925 S.W.2d 640, 646 (Tex. 1996) (reasoning
that courts should not rewrite agreements to insert provisions parties could
have included or imply restraints for which they did not bargain).  Here, the
clear and explicit intention reflected in section 5.8(a) and (b) is that the
act of nonpayment gives rise to an assessment lien; nothing in section 5.8 or
otherwise in the Declaration suggest than an assessment lien relates back to a
previously recorded document or the date on which the Declaration was signed or
recorded.

While we are confronted with the same legal issue as
the Inwood court, i.e., when an assessment lien attached, the real
property covenant in Inwood and the covenant in this case are not
identical.  Unlike the covenant in Inwood, the real property covenant in
this case gave rise to a lien only upon default of monthly assessments.  There
is no basis in the Declaration for attaching the assessment lien in 1984. 
Because an assessment lien neither arose nor attached until the Barbours
defaulted on their assessments, the earliest date in which an assessment lien
could have attached was in November 2004, after Chase=s lien attached to
the Property. 








Therefore, the assessment lien did not attach when the
Declaration was filed 1984.  Rather, it attached upon nonpayment of the monthly
assessments, in or around November 2004.  Accordingly, Chase is the superior
lienholder.[1] 
We overrule Red Rock=s first issue. 

ATTORNEY=S FEES UNDER THE UDJA

Having found that Chase is the superior lienholder, we now
turn to Red Rock=s second issue disputing the availability
of attorney=s fees under the Uniform Declaratory Judgments Act. 
Red Rock argues that the trial court erroneously awarded attorney=s fees to Chase
because Chase=s counterclaim is a trespass to try title suit in the
guise of a request for declaratory relief.  Because attorney=s fees are not
available in suits for trespass to try title, Red Rock argues that Chase was
not entitled to recover attorney=s fees.    








A trial court=s award of
attorney=s fees under the
UDJA is reviewed for an abuse of discretion.  Ridge Oil Co. v. Guinn Invs.,
Inc., 148 S.W.3d 143, 163 (Tex. 2004); Florey v. Estate of McConnell,
212 S.W.3d 439, 447 (Tex. App.CAustin 2006, pet. denied).  In Texas,
attorney=s fees may not be
recovered from an opposing party unless such recovery is provided by statute or
by contract between the parties.  Gulf States Utils. Co. v. Low, 79
S.W.3d 561, 567 (Tex. 2002).   Under the UDJA, a court Amay award . . .
reasonable and necessary attorney=s fees as are
equitable and just.@  Tex. Civ. Prac. & Rem. Code ' 37.009.  A declaration
under the UDJA is appropriate Ato settle and afford relief from
uncertainty and insecurity with respect to rights, status, and other legal
relations.@  Id. ' 37.002(b). 
However, a party may not recover attorney=s fees under the
UDJA when the only issues, aside from attorney=s fees, concern
clearing of title or trespass to try title.  Watts, 260 S.W.3d at 588; see
also Sani v. Powell, 153 S.W.3d 736, 745B46 (Tex. App.CDallas 2005, pet.
denied).  The recovery of attorney=s fees for
trespass to try title is barred because it is not provided for by the property
code.  See Martin v. Amerman, 133 S.W.3d 262, 264 (Tex. 2004). 

We agree with Chase that its counterclaim is not an action
to determine title.  Under the Texas Property Code, trespass to try title is
used to determine title to lands, tenements, or other real property.  Tex.
Prop. Code ' 22.001; Florey, 212 S.W.3d at 449.  Chase=s suit, by
contrast, seeks adjudication of the validity and superiority of Chase=s lien.  Chase=s pleadings
reflect that it filed a suit under the UDJA because (1) A[a] justiciable
controversy exists between Red Rock and [Chase] as to the rights and status of
the parties.@  Chase further requested that the trial court declare
(1) Chase=s deed of trust a prior recorded deed under the terms
of the Declaration, (2) Chase=s deed of trust Aa duly recorded
first mortgage lien,@ (3) that Athe . . .
assessment lien did not attach to the Property until on or after November 10,
2004,@(4) Chase=s deed of trust
superior to the Aassessment lien upon which the Holly Hall
HOA sold the Property at foreclosure on December 6, 2005,@ (5) that ARed Rock=s purchase of the
Property at the December 6, 2005 foreclosure sale did not extinguish [Chase]=s lien against the
Property . . . . ,@ and (6) that ARed Rock acquired
the Property at the December 6, 2005 foreclosure sale subject to [Chase]=s lien against the
Property . . . .@ The trial court construed the terms of
the Declaration and Chase=s deed of trust to  determine which party
was the superior lienholder.  See Bonham State Bank v. Beadle, 907
S.W.2d 465, 467 (Tex. 1995) (reasoning that a declaratory judgment is
appropriate if a justiciable controversy exists as to the rights and status of
the parties and the controversy will be resolved by the declaration sought). 








We recognize that the dispute over lien superiority in this
case prospectively impacts possession of title.  However, while contract
and deed construction cases often implicate title, such cases are not
automatically deemed trespass to try title suits.  All property disputes are
not necessarily barred under the UDJA.    See Tex. Civ. Prac. & Rem.
Code ' 37.004(a).  In
fact, Chase=s claim to resolve a dispute over the superiority of
competing liens is authorized by the terms of the UDJA:

A person interested under a deed, will, written
contract, or other writings constituting a contract or whose rights, status, or
other legal relations are affected by a statute, municipal ordinance, contract,
or franchise may have determined any question of construction or validity
arising under the instrument, statute, ordinance, contract, or franchise and
obtain a declaration of rights, status, or other legal relations thereunder.  

 

Id.  The central
issue in this case was not a Acloud on title@ as a trespass to
try title action is intended to address.  The trial court=s judgment did not
declare title, but rather construed the terms of the Declaration and Chase=s deed of trust
and determined the validity and superiority of two lienholders.  See Aquaduct,
L.L.C. v. McElhenie, 116 S.W.3d 438, 445 (Tex. App.CHouston [14th
Dist.] 2003, no pet.) (concluding that superiority of competing liens is a
proper subject for declaratory judgment).  Chase=s requested
relief, and the relief afforded by the trial court, are a proper subject matter
under the UDJA.  We overrule appellant=s second issue.

SEGREGATION OF ATTORNEY=S FEES

In its third issue, Red Rock contends that the trial court
erroneously awarded attorney=s fees to Chase because it failed to
segregate the fees.  Chase contends that Red Rock has waived its segregation
argument because Red Rock did not timely dispute Chase=s failure to
segregate attorney=s fees before the trial court.  We agree.








Because attorney=s fees must be
authorized by statute or contract, a party presenting more than one claim in a
single cause must segregate attorney=s fees between
recoverable and nonrecoverable claims.  See Green Intern., Inc. v. Solis,
951 S.W.2d 384, 389 (Tex. 1997); AU Pharmaceutical, Inc. v. Boston, 986
S.W.2d 331, 336 (Tex. App.CTexarkana 1999, no pet.).  However, if no
one objects to the fact that the attorney=s fees are not
segregated as to specific claims, the objection is waived.  Solis, 951
S.W.2d at 389; Hruska v. First State Bank of Deanville, 747 S.W.2d 783,
785 (Tex. 1988).

Chase filed two summary judgment motions in this case.  Red
Rock responded to the first motion but did not raise the segregation issue. 
Red Rock did not respond to Chase=s second summary
judgment motion.  After the trial court signed both summary judgments in favor
of Chase, Red Rock filed a motion for new trial, arguing for the first time
that Chase was required to segregate its attorney=s fees.  Thus, we
must determine whether Red Rock=s motion for new trial preserved the issue
of segregation of attorney=s fees for appellate review.  








Appellate procedure rule 33.1 requires that a party lodge a
Atimely request,
objection, or motion@ to present a complaint for appellate
review.  Tex. R. App. P. 33.1(a)(1); see also Solis, 951 S.W.2d at 389 (A[I]f no one
objects to the fact that the attorney=s fees are not
segregated as to specific claims, then the objection is waived.@); Hoxie
Implement Co., Inc. v. Baker, 65 S.W.3d 140, 145 (Tex. App.CAmarillo 2001,
pet. denied) (concluding that appellate rule 33.1 requires Aobjections to a
trial court=s proposed conduct be urged in a timely manner@).  Chase filed
two motions for summary judgment and presented evidence on its attorney=s fees.  Although
Red Rock later objected to Chase=s failure to
segregate in a post-judgment motion, Red Rock made no objection while the issue
of attorney=s fees was considered by the trial court or prior to
the award of attorney=s fees.  Red Rock was required to make a timely
objection or motion and to alert the trial court of its objection to allow the
court an opportunity to correct any alleged error.  See Kleas v. BMC W.
Corp., No. 03-05-00190-CV, 2008 WL 5264883, at *5B6 (Tex. App.CAustin Dec. 19,
2008, pet. denied) (mem. op.); Baker, 65 S.W.3d at 145B46 (Tex. App.CAmarillo 2001,
pet. denied) (concluding that an objection Ain a motion for
new trial does not satisfy the contemporaneous objection rule if the complaint
could have been urged earlier@).  Because Red Rock failed to object to
Chase=s failure to
segregate attorney=s fees at the time in which the evidence
of attorney=s fees was presented and considered by the trial
court, its objection is untimely and, thus, any error is waived.  See Tex.
R. App. P. 33.1(a)(1); see also Kleas, 2008 WL 5264883, at *5B6  (raising
segregation of attorney=s fees for the first time in a motion for
new trial did not preserve issue for appellate review where party failed to
object while the issue was litigated before the trial court); Baker, 65
S.W.3d at 145.  We overrule Red Rock=s third issue. 

Having overruled all of Red Rock=s appellate issues, we affirm the
trial court=s judgment.

 

 

/s/      Adele Hedges

Chief Justice

 

 

Judgment rendered
and Memorandum Opinion filed June 25, 2009.

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.









[1]  We need not address the additional grounds raised in
the parties= briefs as this particular ground is meritorious;
however, we note that there is no merit to Red Rock=s contention that Chase=s lien is inferior with respect to a portion of the mortgage funds
advanced to the Barbous by Chase.  Section 5.9 of the Declaration provides that
assessment liens are subordinate to any subsequent recorded mortgage Agranted or created by the Owner of any Condominium
Unit to secure the payment of monies advanced and used for the purpose of
purchasing and/or improving such Unit.@
Relying on AMC Mortg. Servs. Inc. v. Watts, Red Rock argues that Chase=s lien is not superior with respect to the part of the
purchase money advanced directly to the Barbours because those funds were not
used for the purchase or improvement of the Property.  260 S.W.3d 582 (Tex.
App.CDallas 2008, no pet.).  Watts does not support
Red Rock=s proposition and is not on point.  In Watts,
the issue was whether a lender was entitled to equitable subordination, and if
so, whether appellees qualified as a bona fide purchaser for value based on
lack of actual or constructive knowledge of the lender=s claim.  See id generally.  The record in this
case clearly reflects that Chase=s
mortgage was created for the purpose of refinancing the Barbours mortgage on
the Property.  Red Rock cites no authority for the proposition that Chase=s lien is inferior to its own with respect to monies
advanced directly to the Barbours.  Accordingly, we reject this argument.